2007 WY 47

**Stuart Hall GREENE, Appellant (Plaintiff/Respondent),**

v.

**Carolyn Morse FINN, Personal Representative of the Estate of (Defendant) Jacquelyn K. Greene, Appellee (Defendant/Petitioner).**

No. 05-274.

Supreme Court of Wyoming.

March 16, 2007.

---

Representing Appellant: John M. Kuker and Matthew H. Romsa of Romsa & Kuker, LLC, Cheyenne, Wyoming.

Representing Appellee: Mark A. Bishop and Melinda D. Oldaker of Bishop & Oldaker, LLC, Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, and KITE, JJ, and JAMES, D.J.

VOIGT, Chief Justice.

[¶1] Husband appeals from an order finding him in contempt of court for failing to abide by the terms of a property settlement agreement and divorce decree. We affirm in part and reverse in part.

## ISSUE

[¶2] The parties identified numerous issues, but we will address only two—the first because it is jurisdictional, and the second because it is dispositive under the appropriate standard of review:

1. Whether this appeal should be dismissed because Husband failed to file a supersedeas bond as ordered by the district court?

2. Whether the district court committed a clear and grave abuse of discretion, committed a serious procedural error, or violated a principle of law in holding Husband in contempt of court for failing to comply with certain provisions of the divorce decree?

## FACTS

[¶3] The parties were married in 1981. Husband filed for divorce in 2002. He and Wife entered into a property settlement agreement that was incorporated into their divorce decree, which was entered on April 1, 2002. Wife died on February 18, 2003. On December 19, 2003, the personal representative of her estate filed a motion for order to show cause why Husband should not be held in contempt of court for failure to abide by the terms of the agreement and decree. Specific allegations included:

1. Failure to turn over personal property items awarded to Wife.

2. Failure to pay taxes and association fees for two parcels of property in Colorado.

3. Failure to pay debts assigned to Husband.

4. Failure to cooperate with the Estate in determining the apportionment of certain credit card debts and determining whether Husband had removed Wife's name from certain credit cards.

5. Failure, as Wife's employer, to withhold income for taxes during 2001, and failure to cooperate with the Estate to determine whether Wife paid more than her share of the taxes.

6. Failure to cooperate with the Estate in determining whether Husband had paid all alimony amounts due, and failure to pay a lump sum amount termed "alimony" in the agreement and decree, but actually meant to equalize distribution of assets.

[¶ 4]  An order to show cause was issued, and the matter was heard by the district court on January 25, 2005. The court issued its decision letter on May 9, 2005. That detailed decision letter, which is five pages in length, was incorporated into the order of judgment and contempt. The pertinent portions, wherein Husband is found to be in contempt of court, read as follows:

. . . .

**Violations of the Decree:**

The Court considered the statements of [Husband] as related to each of the property or financial matters for which he has not met his responsibility. Unfortunately, the responses to virtually all of these questions at the time of trial was either that he admitted that he had not paid them or turned over the property, or in the alternative gave several different versions of a defense that he doesn't owe certain monies because he had "taken care of" other matters and in fact supplied money to [Wife] directly. The proof in that regard was lacking, however, and after consideration of all the evidence the Court must find that he has violated the Court order. As to each of the matters below for which the Court finds sufficient evidence, there will be a finding of contempt and associated remedy.

. . . .

**Artwork:**

The Court finds that it is equitable under the circumstances to order return of one-half of the identifiable artwork, or in the alternative suffer judgment in the amount of $2500. Those four (4) lithographs entitled "The Green, Green Grass of Home", "The Riders Return", "Enchanted Mesa", and "Summer Dusk 1 and 2 State 2", are to be apportioned in their value (or identified for purposes of return to the estate) in accordance with [the Estate's] Exhibit 3 and its attachment, the appraisal by American Design Limited.

**Lichvar Furniture:**

Part of this Court's order will be to direct return into the possession of the estate the Lichvar furniture which [Husband] identified and admitted continued in his control. The Court rejects [Husband's] assertion that he had "traded" money or other valuable items in the post divorce environment as he submitted no proof, nor could he recall with any particularity what such a trade might have been.

**Blazer:**

The Court must also reject [Husband's] assertion that he somehow needed a death certificate in order to fully execute his duties under the decree. The evidence and exhibits established that he knew, on a repeated basis, from lawyers, and otherwise, that there was no need for the death certificate to come independently from the representative of the estate, and that a vague offer he may have made at the time of the funeral was not a good faith attempt to comply with the divorce decree. The vehicle is to be returned along with its keys and the title executed into the name of the estate.

. . . .

**Taxes Due:**

Again [Husband] admits owing taxes and should suffer judgment in favor of the estate in the amount of $1489.70 for the [Rabbit Ears] property taxes and for $2671.71 for the Smole property. The Court is not ordering interest on those amounts. While the Court again heard from [Husband] that the taxes may have been owed but he thought he had exchanged other things of value that relieved him of his responsibility, the vagueness of the evidence in this regard convinces the

Court that no additional penalty by way of prejudgment interest should apply.

**Proof of Alimony Payments:**

There was no evidence presented that [Husband] paid alimony for the six months in the years 2002 and 2003. [Husband] will be required as a part of this order to pay to the estate $1200 per month for the six (6) months involved, so that tax returns can be filed and the money can be accounted for, or in the alternative, produce specific documentation ([alluded] to by [Husband]) of those alimony payments. That is, if documentation of alimony payments for two (2) months is provided to [the Estate's] counsel, then the amount owed by [Husband] to the estate would be $1200 per month for four (4) months, etc.

**American Express:**

The evidence in the exhibits presented regarding this matter gave the Court the most difficulty. Because the Property Settlement Agreement and resulting decree appear on their face to give responsibility for the American Express "Blue" and "Platinum" accounts to both parties, an apparent ambiguity occurred. For purposes of a contempt action, however, this Court need only determine if [Husband] has violated the terms of the Decree itself. A fair reading of the Decree, including its equal division of the "miles earned" for each of the credit cards, convinces this Court that [Husband] would be in contempt only to the extent that he has not paid one-half of the total of the two (2) accounts. It is clear from the evidence that he has not. That evidence includes both pre- and post-separation charges to the accounts. The Court is also cognizant of [Husband's] statement that a business was run in part off of one of those accounts and many of the charges may have related to that business. The Court can find here, and does, that while the relationship may have continued both at work and outside work in the post-divorce era, the Decree has in fact been violated by [Husband's] refusal to pay these amounts. The Court will order as a sanction for contempt that [Husband] pay to the [ ] estate $13,098.98 on the "Blue" account and $8,845.12 on the

"Platinum" account, to which will be added any interest or attorney fees on behalf of American Express added to that debt up to and including the date of this order.

The Court recognizes again that [Husband's] defense was one of interpretation, to which the Court has responded above. In addition [Husband] argues that he had given money outside that which he was obligated to provide to [Wife] post-divorce. That may be the case, but there was, even within his testimony, a glaring omission of any evidence or details that would support that claim being considered in the current action. The Court listened closely and reviewed the evidence in this matter to determine where any equitable credit could be given [Wife]. Other than the allowance on some matters for not requiring prejudgment interest, the Court finds it difficult to grant any credit.

## STANDARD OF REVIEW

▆▆ [¶ 5] Under our established standard for the review of contempt orders in domestic relations cases, we will not disturb the decision of the district court absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion. We review questions of law *de novo*, according no deference to the district court's decision. *Crites v. Alston*, 837 P.2d 1061, 1066 (Wyo.1992).

## DISCUSSION

[¶ 6] Before we discuss the dispositive issue in this case, we must consider the Estate's argument that this appeal should be dismissed because Husband has not filed the supersedeas bond that was ordered by the district court. Some background, both factual and legal, is required. On the same day that he filed his notice of appeal, Husband filed a document entitled "Motion for Stay of Proceedings to Enforce Judgment and to Determine Amount of Supersedeas Bond." On October 3, 2005, the district court entered an order granting the motion in part, and denying it in part. That order contained two provisions pertinent to the issue now raised by the Estate:

IT IS HEREBY ORDERED that there shall be no stay of the Judgment relating to all personal property which [Husband] was ordered to surrender to [the Estate].

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that a supersedeas bond shall be posted by [Husband] in the amount of Thirty–Five Thousand Dollars ($35,000.00), to be presented to the Court within ten (10) days of the issuance of this Order.

■ [¶ 7] It is uncontested that Husband never posted the supersedeas bond. It is that failure that the Estate now argues should result in dismissal of this appeal. We are unwilling to take that step, however, because the Estate's argument is not well grounded in the appellate rules, or in the substantive law governing supersedeas bonds. The Estate relies upon W.R.A.P. 1.03 and 4.01. W.R.A.P. 1.03 provides as follows:

> The timely filing of a notice of appeal, which complies with Rule 2.07(a), is jurisdictional. *The failure to comply with* any other rule of appellate procedure, or *any order of court,* does not affect the validity of the appeal, but *is ground only for such action as the appellate court deems appropriate, including but not limited to:* refusal to consider the offending party's contentions, assessment of costs; *dismissal;* and affirmance.

(Emphasis added.) In turn, W.R.A.P. 4.01 provides as follows:

> *Whenever a bond for costs on appeal* is required by law, the bond shall be filed or equivalent security shall be deposited in the trial court with the notice of appeal.

[¶ 8] There are two interrelated problems with this argument, both of which evolve from the fact that W.R.A.P. 4.01 governs bonds required to cover appellate costs, not supersedeas bonds offered to prevent action on a judgment. Supersedeas bonds are governed by W.R.A.P 4.02:

> (a) Whenever an appellant so entitled desires a stay on appeal, appellant may present to the trial court a supersedeas bond in such amount as shall be fixed by the trial court and with surety or sureties to be approved by the court or by the clerk of court. The bond shall be conditioned for the satisfaction of the judgment in full together with costs; interest, and damages for delay, if for any reason the appeal is not perfected or is dismissed, or if the judgment is affirmed, and to satisfy in full such modification of the judgment and such costs, interest, and damages as the appellate court may adjudge and award.

> (b) When the judgment is for the recovery of money not otherwise secured, the amount of the bond shall be fixed at such sum as will cover the whole amount of the judgment remaining and unsatisfied, costs on appeal, and interest, unless the court, after notice and hearing and for good cause shown, fixes a different amount or orders security other than the bond. When the judgment determines the disposition of the property in controversy, as in real actions, replevin, and actions to foreclose mortgages, or when such property is in the custody of the sheriff, or when the proceeds of such property or a bond for its value is in the custody or control of the court, the amount of the supersedeas bond shall be fixed at the sum as will secure the amount recovered for the use and detention of the property, the costs of the action, costs on appeal; interest, and damages for delay. When appellant has already filed a surety bond in the trial court, a separate supersedeas bond need not be given, except for the difference in amount as determined by the trial court to be attributable to the appeal.

> (c) When the judgment directs the execution, assignment or delivery of a conveyance or other instrument, appellant may execute, assign or deliver the conveyance or other instrument, leaving same in the custody of the clerk of the trial court in which the judgment was rendered, there to remain and abide the judgment of the appellate court, and in such case appellant shall give bond only for costs on appeal and damages for delay.

> (d) Executors, administrators and guardians shall be required to give a supersedeas bond.

[¶ 9] It must be remembered that the bond in this case was not required by law or requested by the Estate to ensure recovery of appellate costs. Rather, the supersedeas bond in this case was requested by the Husband, no doubt to prevent enforcement of the judgment *pendente lite.* That comports with the general definition and effect of a supersedeas bond:

A supersedeas is a suspension of the power of a court from which an appeal has been taken to issue an execution on the judgment or decree appealed from. If a writ of execution has issued, supersedeas is a prohibition against execution of the writ. Supersedeas preserves the status quo of the case. It does not, however, set aside or annul the trial court's judgment.

. . . .

5 Am.Jur.2d *Appellate Review* § 436 (1995) (internal footnotes omitted). *See also V–1 Oil Co. v. People,* 799 P.2d 1199, 1202–03 (Wyo.1990). The following general rules also apply:

A party need not obtain a stay of judgment, nor file a supersedeas bond, in order to take or prosecute an appeal. Failure to file such a bond is not grounds for dismissal of an appeal, but simply removes the supersedeas aspect of the appeal and leaves the party who obtained the judgment free to execute on the judgment.

5 Am.Jur.2d *Appellate Review* § 442 (1995) (internal footnotes omitted). The Estate's remedy, upon Husband's failure to file the supersedeas bond he, himself, requested, was to proceed to execute on the judgment, rather than to seek dismissal of the appeal. Beyond that, by the terms of the district court's order, the supersedeas did not stay the effect of the judgment in regard to the personal property, so the Estate could have pursued any available remedies to obtain the artwork, the Lichvar furniture, and the Blazer.

[¶ 10] Having concluded that dismissal is inappropriate, we will proceed to consider the merits of this appeal. The issue can be reduced to a series of fairly simple questions: (1) What was Husband found in contempt of court for failing to do; (2) was Husband clearly ordered to do that which he was found to have failed to do; (3) did the district court abuse its discretion, make a serious procedural error, or violate some principle of law in determining that Husband failed to comply with the provisions of the decree?

[¶ 11] The first question has already been answered hereinabove. The district court found that Husband did not turn over one-half of the couple's artwork, that he did not deliver possession of the Lichvar furniture, that he did not deliver possession of the Blazer, that he did not pay certain taxes, that he did not pay alimony, and that he did not pay one-half of the amounts due under the couple's "Blue" and "Platinum" American Express credit cards.

[¶ 12] A review of the divorce decree answers the second question. Pursuant to the decree, Wife was to receive one-half of the artwork, most of the Lichvar furniture, and the Blazer. In addition, Husband was to pay real property taxes on the "Hilltop" property until that property sold, taxes and association fees on the "Rabbit Ears" and "Smole" properties as due on January 1, 2002, "941" taxes, and his prorata share of any 2001 federal income tax. As to alimony, the decree provided that Husband would pay Wife as "temporary alimony," $1,200 per month for six months, plus alimony of $10,000 at a rate of $100 per month for 60 months (July 2002 to July 2007), with a final lump-sum payout on the latter date.[1] Finally, the decree ordered Husband to pay the "American Express, Platinum and Blue," while it ordered Wife to pay the "Amex—Blue/Platinum."

[¶ 13] The third question is whether the district court abused its discretion, made a serious procedural error, or violated some principle of law in determining that Husband had violated the decree. This analysis logically begins with a review of the evidence that was presented as to each finding. The evidence supportive of the district court's con-

---

1. The temporary alimony provision had a complicating "reservation." In the event that Wife's medical prescription bills totaled less than $500 in any given month, the alimony due the following month would be reduced by that amount. For example, if Wife's medical prescriptions cost only $400 one month, Husband would only owe $1100 the following month.

clusions can be summarized as follows: Husband admitted under cross-examination that he continued to possess all of the artwork, the Lichvar furniture, and the Blazer; the Estate's personal representative testified that, upon Husband's failure to pay $1,489.70 property taxes on the "Rabbit Ears" property and $2,671.61 on the "Smole" property, the Estate was forced to make those payments; and, as noted by the district court, there was no direct proof that Husband had made any alimony payments. In all of these instances, the evidence was clearly sufficient to establish Husband's violation of the decree, and we affirm the determinations of the district court in regard thereto.

[¶ 14] No doubt because of the ambiguity in the property settlement agreement and decree as to which party was to pay the American Express credit card debt, an ambiguity expressly recognized by the district court in its decision letter, much of the testimony, and many of the exhibits, focused on those accounts. In finding Husband in contempt of court, the district court "got around" this ambiguity by concluding that, because the "miles earned" on the American Express cards were equally divided between the parties in the decree, the intent must also have been to divide the debt on the cards equally between the parties. We do not believe that this implication is sufficient to be the basis of a finding of contempt. One of the controlling principles of law in contempt jurisprudence is that ambiguities in court orders "redound to the benefit of the person charged with contempt." *Bard Ranch Co. v. Weber*, 557 P.2d 722, 733 (Wyo.1976) (quoting *Ford v. Kammerer*, 450 F.2d 279, 280 (3d. Cir.1971)). We adhered to that principle in *Crites*, 837 P.2d at 1069–70, where we said the following:

> The father draws our attention to numerous cases from other jurisdictions standing for the proposition that before there can be a "willful violation" of a court decree, there must first exist a valid court order which is "clear, specific and unambiguous." We find support for the father's argument in several cases referenced in his appellate brief. For example, in *Cunningham v. Eighth Judicial Dist. Court of State of Nev., In and For Clark County*, 102 Nev. 551, 729 P.2d 1328, 1333–34 (1986), the Nevada Supreme Court stated:
>
> > An order on which a judgment of contempt is based must be clear and unambiguous, and must spell out the details of compliance in clear, specific and unambiguous terms so that the person will readily know exactly what duties or obligations are imposed on him.
>
> Similarly, in *Southwest Gas Corp. v. Flintkote Co.—U.S. Lime Div.*, 99 Nev. 127, 659 P.2d 861, 864 (1983) (quoting *Ex Parte Slavin*, 412 S.W.2d 43, 44 (Tex.1967)), the same court stated:
>
> > Generally, an order for civil contempt must be grounded upon one's disobedience of an order that spells out "the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed on him."

[¶ 15] The district court violated this fundamental principle in finding Husband to be in contempt of court for not paying one-half of the American Express credit card debt because the decree simply did not make it clear that he was obligated to do so.[2]

## CONCLUSION

[¶ 16] The divorce decree clearly ordered Husband to deliver to Wife one-half of the artwork, the Lichvar furniture, and the Blazer. It also clearly ordered him to pay the property taxes on the "Rabbit Ears" and "Smole" properties, and to pay Wife alimony

---

**2.** That conclusion does not answer the question of what the decree actually intended in that regard. That question remains open for resolution in some other proceeding. Furthermore, although the quoted materials refer to "willful" violations, we are not herein basing our determinations upon whether or not Husband's actions were "willful," or what that term's definition might be under the circumstances, or whether willfulness is even an element of civil contempt. Compare *Pittman v. Pittman*, 999 P.2d 638, 641 (Wyo.2000) and *Crites*, 837 P.2d at 1066, with 17 Am.Jur.2d *Contempt* §§ 27–28 (2004). Husband's defense to the allegations was not a lack of willfulness; his defense was that, in equity, his obligations under the decree were cancelled by other post-decree payments he made to or for Wife.

in the amount of $1200 per month for six months. He did none of those things, and the district court did not err in finding him in contempt of court for those failures, or in ordering delivery of the property and in entering judgment for amounts owed. The decree did not, however, clearly order Husband to pay one-half of the American Express credit card debt, and the district court did err in finding him in contempt for that alleged failure.

[¶ 17] The judgment of the district court is affirmed as to the artwork, the Lichvar furniture, the Blazer, the property taxes, and the alimony. It is reversed as to the American Express credit card debt. This matter is remanded to the district court for further proceedings consistent herewith.