# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 115

APRIL TERM, A.D. 2013

September 27, 2013

CARL S. OLSEN,

Appellant
(Plaintiff),

v.

No. S-13-0033

CANDY M. OLSEN,

Appellee
(Defendant).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
    *Pro se.*

*Representing Appellee:*
    *No appearance.*

*Before KITE, C.J., and HILL, VOIGT, and BURKE, JJ., and TYLER, D.J.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Justice.**

[¶1]    Appellant, Carl S. Olsen, appeals the district court's denial of his motion to modify the custody of his three children.  He also challenges the district court's finding that he was in contempt of court for failing to comply with the divorce decree.  We will affirm.

## ISSUES

[¶2]   The issues presented by Mr. Olsen, reworded for the sake of clarity, are as follows:

>    1. Did the district court abuse its discretion when it determined there was no material change in circumstances?
>
>    2. Did the district court deny due process to Mr. Olsen?
>
>    3. Did the district court abuse its discretion by failing to give paramount consideration to the best interests of the children?
>
>    4. Did the district court abuse its discretion in awarding certain costs to Ms. Olsen?
>
>    5. Did the district court improperly fail to consider contradictory testimony?
>
>    6. Did the district court abuse its discretion when it found Mr. Olsen in contempt?

## FACTS

[¶3]    The parties were married in 2000 and divorced in 2010.  Custody of their three children was awarded to Ms. Olsen.[1]  Mr. Olsen appealed that decision.  We affirmed. *Olsen v. Olsen*, 2011 WY 30, ¶ 1, 247 P.3d 77, 78 (Wyo. 2011).[2]

---

[1] We acknowledge that Ms. Olsen resumed the use of her former name, Candy M. Judd, following the divorce.  However, to avoid confusion and remain consistent with the pleadings in this case, we refer to her as Ms. Olsen in this opinion.

[2] We reversed the district court's decision with regard to one aspect of the property division, but that issue is not relevant to the current appeal.

1

[¶4]   Even before we issued that decision, Mr. Olsen filed a petition in district court seeking a modification awarding him custody of the children.  He alleged, among other things, that the children's physical and mental health had deteriorated while in Ms. Olsen's care, that Ms. Olsen was unable to provide basic provisions for the children, and that Ms. Olsen, in bad faith, planned to move with the children from Wyoming to Utah.[3]  He further alleged that he could provide the children with a stable and caring environment, so that the best interests of the children would be served by awarding custody to him.  While Mr. Olsen's petition was pending, Ms. Olsen filed a motion seeking to have Mr. Olsen held in contempt for failing to comply with the divorce decree's order to list their jointly-owned real property for sale.

[¶5]   Following a three-day hearing, the district court issued a decision letter denying Mr. Olsen's petition to modify custody on the basis that Mr. Olsen had not demonstrated a material change in circumstances.  It also granted Ms. Olsen's request to hold Mr. Olsen in contempt on the basis that he had willfully disobeyed the order to list the property for sale.  Mr. Olsen filed this timely appeal.  He appears *pro se*.

## DISCUSSION

[¶6]   As a preliminary matter, W.R.A.P. 7.05(a)(1) provides that a principal brief shall not exceed seventy pages except by permission of the appellate court.  Mr. Olsen's brief exceeds eighty pages.  Further, most of the text is single-spaced, contrary to the mandate of W.R.A.P. 7.05(b)(2).  If the text were double-spaced, the length of Mr. Olsen's brief would greatly exceed the page limit.  Pursuant to W.R.A.P. 1.03, these violations of our appellate rules are grounds for "such action as the appellate court deems appropriate, including but not limited to:  refusal to consider the offending party's contentions; assessment of costs; dismissal; and affirmance."

[¶7]   We recognize that a "*pro se* litigant is entitled to some leniency from the stringent standards applied to formal pleadings drafted by attorneys."  *Young v. State*, 2002 WY 68, ¶ 9, 46 P.3d 295, 297 (Wyo. 2002).   More significantly, this case involves the custody and welfare of three children.  For these reasons, we will not dismiss the appeal or summarily affirm the district court.

[¶8]   However, we will not simply overlook these violations.  Even with *pro se* parties, "there must be a reasonable adherence to the procedural rules and requirements of the

---

[3] Ms. Olsen and the children moved to Utah in April, 2011, and had been living there for approximately ten months at the time of the hearing on Mr. Olsen's petition for change of custody.

court." *Id*. Faced with similar circumstances in the past, we have refused to consider that portion of a brief in excess of the page limit. *In re Adoption of GSD*, 716 P.2d 984, 986 (Wyo. 1986). Because the bulk of Mr. Olsen's brief is single-spaced, it is difficult to determine the number of pages by which his brief actually exceeds the limit. Instead, the sanction we deem appropriate in this case is to refuse to consider Mr. Olsen's fourth issue, a contention that the district court erred in requiring him to pay certain of Ms. Olsen's litigation costs.

## *Issue 1: Material Change in Circumstances*

[¶9] Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 2011) provides that a court "may modify an order concerning the care, custody, and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children." Under this statute, modification of child custody is a two-step process. The first step involves a showing of "a material change in circumstances since the entry of the order in question. The second step requires the court to determine whether a modification will be in the best interests of the children." *Hayzlett v. Hayzlett*, 2007 WY 147, ¶ 9, 167 P.3d 639, 642 (Wyo. 2007) (internal citations omitted).

[¶10] In Mr. Olsen's case, the district court determined that there was no material change in circumstances. Mr. Olsen contends that there were substantial and material changes in the circumstances. He therefore claims that the district court's decision represents an abuse of discretion.

[¶11] As we recently observed in *JKS v. AHF*, 2013 WY 97, ¶ 5, 307 P.3d 852, 854 (Wyo. 2013), child custody is a question committed to the sound discretion of the district court, and accordingly, we review a district court's child custody decision for abuse of discretion.

> We will not interfere with the district court's custody determination absent procedural error or a clear abuse of discretion. In determining whether an abuse of discretion has occurred, our primary consideration is the reasonableness of the district court's decision in light of the evidence presented. We view the evidence in the light most favorable to the district court's determination, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.

*Durfee v. Durfee*, 2009 WY 7, ¶ 6, 199 P.3d 1087, 1089 (Wyo. 2009) (internal citations omitted).

[¶12] Mr. Olsen supports his claim with a list, more than fifteen single-spaced pages in length, of all the evidence he interprets as contrary to the district court's decision. However, when we apply the standard of review explained above, this is not the evidence we consider. Instead, we consider the evidence favorable to the district court's decision. As we have previously stated, "Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party." *Reavis v. Reavis*, 955 P.2d 428, 431 (Wyo. 1998).

[¶13] Our review of the record reveals sufficient evidence to support the district court's decision. After a three day hearing that encompassed testimony from seventeen witnesses, the evidence before the district court was voluminous. We will discuss representative examples, but find it unnecessary to review all of the evidence in detail.

[¶14] In its decision letter, the district court observed that, at the divorce trial, almost none of the allegations made by Mr. Olsen had been borne out by the evidence, and "again in the post-divorce era, [Mr. Olsen] has made many allegations that were, at a minimum, overstated." The district court then listed a number of circumstances that it found unchanged since the divorce. With regard to Mr. Olsen:

> [He] still has substandard housing arrangements and purports to be the proper custodial parent even though he lives in a two bedroom residence and is about to be married. His fiancée [now] is different than the woman he was in a relationship with at the time of the first hearing. He points to an incident of admitted marijuana use by the mother, certainly inappropriate conduct, but attempted in a number of ways to gloss over his own substance abuse in the form of a driving while under the influence conviction. Whether one is better or more harmful to the children than the other, it supports that there is little change in the parenting or in the individual decision making of these two parties since the time of the divorce.

[¶15] Mr. Olsen testified at the hearing that he lived in a two-bedroom mobile home. When the children stayed with him, the two daughters shared one bedroom and Mr. Olsen and his son shared the other. He acknowledged that these living arrangements would not work if his fiancée moved to Wyoming to live with him. This evidence supports the district court's finding relating to substandard living arrangements.

[¶16] Ms. Olsen admitted smoking marijuana in January, 2011. Mr. Olsen admitted that he pled guilty to a charge of driving while under the influence of alcohol in South Dakota in November, 2010. He conceded that his driving privileges had been suspended, but

4

asserted that the suspension applied only in South Dakota. He testified that he had obtained a "probationary" driver's license, and indicated that his driving privileges had not been restricted in Wyoming. A witness employed by the Wyoming Department of Transportation contradicted his testimony. She testified that if a Wyoming resident's driving privileges are suspended by any other state, those privileges are also suspended in Wyoming. She indicated that Mr. Olsen's driving privileges in Wyoming were suspended from January 7 through April 6, 2011. She confirmed that Mr. Olsen had received a probationary driver's license, but clarified that it allowed Mr. Olsen to drive only for certain limited purposes, such as medical emergencies, court appearances, or employment. She stated that the probationary license would not have authorized Mr. Olsen to drive to Utah to pick up his children for visitation. This evidence amply supports the district court's finding as to Mr. Olsen's efforts to "gloss over" his own problems.

[¶17] The district court also made these findings with regard to Mr. Olsen:

> Likewise at the time of the divorce the Court made findings concerning domestic violence during the marriage by the father. The Court was not, apparently, emphatic enough about that finding at the time. The father was abusive and acting in a controlling fashion during the marriage. The Court finds again that the evidence here supports that he very often disagrees with the mother's decision making because he cannot control it. The trial evidence, especially the testimony of the [father] himself, is replete with examples. For instance, [his] assertion that he had to "follow the court order" and subject the children to weekend drives to and from Utah. This choice was not generated by the best interest of these children. Instead this was clearly a result of the father's frustration and his complete inability to agree with any suggestion the mother might make about alternatives that might be better for [him] and his children. He refuses to accord her or anything she suggests with any respect. The decree allows for agreement of the parties to work around problems and now, as at the time of the divorce, the [father] will agree to nothing.

(Emphasis omitted.)

[¶18] The record includes several examples of Mr. Olsen's disagreements with Ms. Olsen and his controlling behavior. The example cited by the district court involved Mr. Olsen's visitations with his children after they moved to Utah. Mr. Olsen testified that it is around 700 miles from Cheyenne to the children's home in Utah. It is a ten- or

eleven-hour drive each way. On four occasions after the children moved to Utah, Mr. Olsen exercised his weekend visitation rights by driving to Utah, picking up the children at 6 p.m. on Friday, and driving them to Cheyenne for the weekend. Ms. Olsen then drove to Cheyenne on Sunday, picked up the children at 6 p.m., and took them back to Utah. That meant the children arrived home at approximately 5 a.m., and needed to be ready for school only three hours later. Mr. Olsen admitted that it was a hardship on the children to travel from Utah to Cheyenne for weekend visitation. Ms. Olsen testified that "it wasn't in the best interests of the kids to be traveling back and forth between Utah and Wyoming," and that she had asked Mr. Olsen to keep the children in Utah during his visitation. The district court commented in the decision letter that it was "appalled" that Mr. Olsen had subjected the children to such lengthy car trips in a single weekend. This evidence supports the district court's findings that Mr. Olsen's decisions were "not generated by the best interest of these children."

[¶19] The evidence also supports the district court's observation that many of Mr. Olsen's allegations against Ms. Olsen were unproven. He alleged, for example, that Ms. Olsen had taken his two daughters out of counseling. To the contrary, Ms. Olsen testified that the older daughter was in counseling. The younger daughter was screened by the same counselor, who concluded she should participate in family therapy rather than individual counseling. Ms. Olsen conceded that she did not take the children to counseling immediately after moving to Utah, but the delay of a few months was due to an insurance issue. Mr. Olsen admitted that, until the first day of the hearing, he did not know that the daughters had been receiving counseling.

[¶20] With regard to Ms. Olsen, the district court acknowledged evidence that the children were not doing well in school and had health problems, but found that these problems were not "related to poor or inadequate care by the mother." It also acknowledged evidence of changes in the children's behavior and attitudes, but found that these "cannot be laid entirely on the mother or the father but perhaps points out the difficulty for these children in what has amounted to constant ongoing litigation for years." These findings are also supported by the evidence of record.

[¶21] Based on these and other findings, the district court determined that circumstances had not materially changed with regard to either Mr. Olsen or Ms. Olsen. The evidence, viewed in a light favorable to the district court's decision, provides ample support for that determination. The district court made a reasonable decision based on the evidence presented, and did not abuse its discretion.

[¶22] Two other aspects of the district court's determination merit our attention. First, the guardian ad litem appointed to represent the children recommended a finding that there had been a material change of circumstances, and further recommended that custody be transferred to Mr. Olsen. In its decision letter, the district court indicated that it had considered the recommendations of the guardian ad litem, but did not agree with

them. A court is not required to accept the recommendations of a guardian ad litem. As this Court has often said, "our rule is that the credibility of witnesses, the weight of the evidence, and conflicts in the evidence must be resolved by the finder of fact." *Montee v. State*, 2013 WY 74, ¶ 23, 303 P.3d 362, 367 (Wyo. 2013), quoting *Aden v. State*, 717 P.2d 326, 328 (Wyo. 1986).

[¶23] Second, in its decision letter, the district court stated that Ms. Olsen's move to Utah "should generally be discounted in terms of a substantial change." At the time the decision letter was issued, that statement was in accord with our precedent. *See Watt v. Watt*, 971 P.2d 608, 614 (Wyo. 1999). *Watt* was subsequently overruled. In *Arnott v. Arnott*, 2012 WY 167, ¶ 40, 293 P.3d 440, 458 (Wyo. 2012), we stated that, "With this decision, we explicitly recognize that a relocation by the primary physical custodian, as well as 'factors that are derivative of the relocation' – including 'the inherent difficulties that the increase in geographical distance between parents imposes' – may constitute a material change in circumstances sufficient to warrant consideration of the best interests of the children."

[¶24] Mr. Olsen's brief quotes from *Arnott*. He does not address issues such as whether this change in law applies to his case, or whether *Arnott* should apply retroactively. It is, however, unnecessary for us to decide how or whether *Arnott* applies in Mr. Olsen's case. In *Arnott*, our focus was on the "strong presumption in favor of the right of a custodial parent to relocate with her children" recognized in the *Watt* opinion. *See Arnott*, ¶ 21, 293 P.3d at 449 (emphasis omitted), quoting *Watt*, 971 P.2d at 614. "Ultimately, we agree[d] with the conclusion reached in other jurisdictions that presumptions in favor of one parent or another are detrimental to the interests of all parties in cases involving modification of child custody based on relocation of a custodial parent." *Arnott*, ¶ 38, 293 P.3d at 457. On that basis, we ruled that such a presumption "no longer applie[d]." *Id.*, ¶ 41, 293 P.3d at 458.

[¶25] In the case before us now, the district court did not apply any presumption in favor of Ms. Olsen's right to relocate. The district court cataloged the ways in which Mr. Olsen's circumstances were unchanged. It recognized that Ms. Olsen's relocation had resulted in some changes, but noted that some of those changes were beneficial. The district court recognized that the move

> has in a number of ways increased her stability. Employment prospects were potentially better, and have played out in that fashion in Utah. The increased stability for the children around her family (emphasizing again that the [father's] extended family here was also of great benefit to the children) also benefited the children and her ability to parent as a single mother. The shortcomings pointed out, such as some delay in

starting counseling, were not changes at all, but events adequately explained by the circumstances of moving.

[¶26] Ultimately, the district court concluded that Mr. Olsen's unchanged circumstances, behaviors, and attitudes outweighed any changes resulting from the relocation. The decision is consistent with the evidence in this record, and we cannot conclude that the district court abused its discretion in finding no material change in circumstances.

*Issue 2: Due Process*

[¶27] Mr. Olsen asserts that he was denied due process because the district court judge refused to recuse himself from the case, even though he was aware that Mr. Olsen had filed a complaint against him with the Commission on Judicial Conduct. This assertion is without merit.

[¶28] Motions for a change of judge are governed by W.R.C.P. 40.1(b)(2), which specifically states that such motions "shall be supported by an affidavit or affidavits of any person or persons, stating sufficient facts to show the existence of such grounds." Mr. Olsen provided no such affidavit to the district court. In his brief, Mr. Olsen suggests that a supporting affidavit was not needed because his motion was only "a request for a voluntary recus[al] by the Trial Court Judge," and not a "motion to disqualify as it did not address any specific evidence of bias only the possibility of such." His argument, apparently, is that his informal request was not governed by W.R.C.P. 40.1(b)(2). This argument finds no support in Wyoming case law. To the contrary, we have said that a movant is "required to submit an affidavit stating sufficient facts to show the existence of judicial bias or prejudice against him." *Reichert v. State*, 2006 WY 62, ¶ 37, 134 P.3d 268, 278 (Wyo. 2006). Mr. Olsen also seems to suggest that a judge must recuse himself in every instance when a complaint against him has been filed by one of the litigants. This argument also lacks support in our case law. Such a rule would encourage litigants to file groundless complaints whenever they wanted a different judge. Mr. Olsen was not denied due process.

*Issue 3: Best Interests of the Children*

[¶29] Mr. Olsen contends that the district court erred by disregarding the best interests of the children. As we explained above, however, modification of child custody is a two-step process. The first step involves a showing of "a material change in circumstances since the entry of the order in question. The second step requires the court to determine whether a modification will be in the best interests of the children." *Hayzlett*, ¶ 9, 167 P.3d at 642 (internal citations omitted). If the court finds no material change in circumstances in the first step, it is not required to take the second step of evaluating the best interests of the children. In Mr. Olsen's case, the district court found no material change in circumstances.

[¶30]  In addition, Mr. Olsen has failed to establish that the district court did not consider the best interests of the children.  Many of the facts relied on by the district court in determining if there was a material change in circumstances also relate to the best interests of the children.  Moreover, when granting the divorce, the district court explicitly made the decision that it was in the best interests of the children to be in Ms. Olsen's custody.  We cannot agree with Mr. Olsen that the district court ignored the best interests of the children in this case.

## Issue 4:  Award of costs to Ms. Olsen

[¶31]  For the reasons explained at the beginning of this discussion, we decline to consider Mr. Olsen's contentions relating to this issue.

## Issue 5:  Contradictory Evidence

[¶32]  In this issue, Mr. Olsen makes a passionate effort to demonstrate that Ms. Olsen and another witness on her behalf presented contradictory testimony and committed perjury.  He contends that the district court erred by failing to consider these contradictions.  We agree that the record indicates some discrepancies in the testimony of Ms. Olsen and the other witness.  There are also discrepancies in Mr. Olsen's testimony.  However, Mr. Olsen has made no showing that the district court ignored these discrepancies.  In fact, the district court observed in its decision letter that Mr. Olsen's "candor is again in question," demonstrating that it had considered the credibility of the witnesses in making its decision.  As stated earlier in this opinion, "our rule is that the credibility of witnesses, the weight of the evidence, and conflicts in the evidence must be resolved by the finder of fact."  *Montee*, ¶ 23, 303 P.3d at 367, quoting *Aden*, 717 P.2d at 328.  We will not disturb the district court's resolution of the credibility of the witnesses.

## Issue 6:  Contempt

[¶33]  In his final issue, Mr. Olsen challenges the district court's decision holding him in contempt.

> This Court will not disturb an order holding a party in civil contempt in a domestic relations case absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion.  We review questions of law *de novo*.  *Greene v. Finn*, 2007 WY 47, ¶ 5, 153 P.3d 945, 948 (Wyo. 2007).  In reviewing the exercise of a district court's broad discretion to sanction contumacious acts, we must determine whether the court reasonably could have concluded

as it did. *Stephens v. Lavitt*, 2010 WY 129, ¶ 18, 239 P.3d 634, 639 (Wyo. 2010).

*Roberts v. Locke*, 2013 WY 73, ¶ 14, 304 P.3d 116, 120 (Wyo. 2013). Mr. Olsen makes no claim of procedural error or violation of a principle of law. Although he attempts to frame his argument in the context of his constitutional rights, the real basis of his claim is that there was insufficient evidence to prove a willful failure to comply with the district court's order.

[¶34] In its divorce decree, the district court ordered that certain real property "will be listed for sale immediately but in any event not later than thirty (30) days after this Decree is filed." Proceeds of the sale were to be applied to pay off debt associated with the property, with any remaining proceeds to be divided equally between Mr. Olsen and Ms. Olsen.

[¶35] At the hearing on the motion to modify custody, Mr. Olsen testified that he was aware of the court's order requiring the listing of the property for sale. He agreed that he had not complied with that order. He provided no explanation for failing to list the property for sale. The district court, in its decision letter, wrote that, "based on the trial evidence the Court has to find that the plaintiff in this case willfully disobeyed that court order, and beyond that may have done so out of spite or a misguided attempt to further control the post-divorce relationship between the parties."

[¶36] We have previously discussed Mr. Olsen's efforts to maintain control. The record also supports the district court's finding that Mr. Olsen had taken actions motivated by spite toward Ms. Olsen. An example of spite involves the motorcycle awarded to Ms. Olsen in the divorce decree. At the time of the divorce, the motorcycle was in Mr. Olsen's possession. When Ms. Olsen went to retrieve the motorcycle, she found it "in pieces," and she "had to take the motorcycle in parts." We conclude that the evidence in this record, along with the inferences reasonably drawn from that evidence, supports the district court's finding that Mr. Olsen willfully violated the court's order.

## *CONCLUSION*

[¶37] The district court's decision is affirmed.

10