# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 123

APRIL TERM, A.D. 2014

October 3, 2014

SHEILA RENEE MCADAM,

Appellant
(Plaintiff),

v.

S-14-0044

DOUGLAS RAYMOND MCADAM,

Appellee
(Defendant).

*Appeal from the District Court of Natrona County*
The Honorable Catherine E. Wilking Judge

*Representing Appellant:*
    Devon P. O'Connell and Dustin J. Richards of Pence and MacMillan LLC, Laramie, Wyoming.

*Representing Appellee:*
    Richard H. Peek, Casper, Wyoming.

*Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.*

**\*Chief Justice at time of expedited conference.**

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Justice.**

[¶1] Shelia Renee McAdam (Wife) and Douglas Raymond McAdam (Husband) were divorced by stipulated decree. Both parties later claimed the other party was in contempt for failing to list the marital residence for sale as required by the decree. Wife also claimed Husband was in contempt for failing to transfer half of his investment accounts and stock options to her.

[¶2] The district court found both parties in contempt with regard to the listing and sale of the home and again ordered it listed by a specified date. If it sold, the district court ordered the parties to share any profit or loss; if it did not sell, the court ordered Wife to pay one-half of the mortgage payment. The district court concluded Husband had not willfully violated the decree with regard to the investment account and stock options but ordered him to transfer an investment account and three stock options to Wife. The district court further ordered the parties to bear their own fees and costs resulting from the post-divorce contempt proceedings.

[¶3] On appeal, Wife claims the district court improperly modified the stipulated divorce decree when it ordered her to share any loss on the home or, if it did not sell, pay one-half of the mortgage payment until it did sell. She also contends the district court erred in not ordering Husband to pay her fees and costs after he violated the decree by failing to transfer the investment accounts and stock options. We conclude the district court properly exercised its discretion and affirm.

## ISSUES

[¶4] Wife asserts the district court improperly modified the divorce decree contrary to the doctrine of res judicata by: 1) ordering the parties to share in any loss on the marital home if it sold; 2) ordering her to pay one-half of the mortgage payments if the home did not sell; and 3) failing to award her attorney fees and costs resulting from Husband's failure to transfer the investment accounts and stock options. Husband asserts no error occurred.

## FACTS

[¶5] Wife and Husband were divorced pursuant to a stipulated decree on May 9, 2011. The parties agreed to list the marital residence in Gillette, Wyoming for sale with a licensed realtor within thirty days after entry of the decree. They further agreed to cooperate with the realtor and comply with reasonable requests associated with selling the residence. The stipulated decree provided that written consent of both parties was required for acceptance or countering any offer to purchase the home. They agreed that

after sale of the home, they would equally divide any proceeds remaining after payment of costs, commissions or amounts owing on the mortgage. The decree stated:

> [Husband] shall enjoy exclusive possession of the residence pending sale of it and shall timely [sic] the monthly mortgage payment and utilities until closing is completed. [Husband] shall be entitled to claim all payments associated with the residence as deductions on his federal income tax returns.

The stipulated decree also awarded Wife one-half of Husband's investment accounts and stock options. The decree further provided:

> In the event either party shall fail to perform, in whole or in part, any obligation or duty imposed by the terms of this Order, the defaulting party shall be responsible for the payment of all attorney's fees, costs, and expenses incurred by the other party as a result of such default.

[¶6] In January 2012, Wife filed a motion for order to show cause claiming Husband was in contempt of court for violating the decree in several respects including that he had not listed the residence for sale within the time required and had allowed it to become flood damaged, causing a substantial decrease in its value. She sought an order requiring Husband to repair the damage done to the home and list it for sale. Husband subsequently filed a motion for order to show cause claiming Wife was in contempt of court for violating the decree in several respects including that she was at fault for the fact that the residence was not listed for sale. After a hearing, the district court found both parties in contempt with regard to the listing and sale of the residence and again ordered that it be listed for sale within thirty days and sold "as is." The district court further ordered that the parties "shall equally share any equity or loss in the sale" and declined to award attorney fees and costs to either party based upon its finding that neither of them had complied with the decree.

[¶7] In March 2013, Wife filed another motion for order to show cause claiming the residence still had not been listed and Husband had prevented her from having it listed. She also claimed Husband had not transferred her share of the stock options and investment accounts as the decree required. Husband filed a response claiming that he had complied with the decree and subsequent order and Wife had failed to comply with the provision requiring sale of the home.

[¶8] After a hearing, the district court again ruled that both parties were in contempt of the decree and subsequent order with regard to the home. The court ruled that the parties could purge their contempt by executing a listing agreement within thirty days with the real estate agent who had testified at the hearing. If the home was not sold within ninety

days, the district court ordered that Wife would become responsible for one-half of the mortgage payment. Addressing the stock options, the district court concluded Husband did not commit a willful violation of the decree but ordered him to transfer three stock options and an investment account to Wife. Finally, the district court ordered the parties to pay their own fees and costs. Wife timely appealed the district court order.

## STANDARD OF REVIEW

[¶9] Under our established standard for reviewing contempt orders in domestic relations cases, we will not disturb the decision of the district court absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion. *Greene v. Finn*, 2007 WY 47, ¶ 5, 153 P.3d 945, 948 (Wyo. 2007). The inherent power to punish contempt of court is firmly vested in the district court's broad discretion, and we will not intrude upon its decision unless it commits a clear and grave abuse of that discretion. *Meckem v. Carter*, 2014 WY 52, ¶ 18, 323 P.3d 637, 644 (Wyo. 2014). In reviewing the exercise of a district court's broad discretion under its contempt powers, we determine whether the court reasonably could have concluded as it did. *Shindell v. Shindell*, 2014 WY 51, ¶ 7, 322 P.3d 1270, 1273 (Wyo. 2014). We review questions of law *de novo*, giving no deference to the district court's decision. *Greene,* ¶ 15, 153 P.3d at 948.

## DISCUSSION

[¶10] Wife claims the district court had no authority in the contempt proceedings to modify the terms of the stipulated property division in the decree. First, she claims the district court erred when it ordered her to share in any loss on the sale of the marital home or, if it did not sell, pay one-half of the mortgage payments. She asserts this is contrary to the decree which required the home to be listed for sale, gave Husband possession of the home pending sale and made him responsible for the mortgage payments.

[¶11] Husband argues that upon finding both parties in contempt with regard to sale of the home, the district court properly ordered them to share any loss equally or, if the home did not sell, to each pay half of the mortgage payment. Husband asserts the district court had the inherent authority to enforce its own judgment and, upon finding that the parties were in contempt for failing to comply with the home sale provision of the decree, had the discretion to impose punishment. He argues the district court's decision to make them share equally in any loss or jointly pay the mortgage as punishment was appropriate. Husband also argues that Wife did not appeal the first contempt order requiring the parties to share in any loss from sale of the home and she is barred from appealing it now.

[¶12] Husband is correct that Wife did not appeal the first contempt order. However, in the second contempt order, the district court again ordered the parties to share equally any profit or loss on the home. Because the district court's second order also required the

3

parties to share any profit or loss, we conclude the issue is properly before us for consideration. We, therefore, consider Wife's contention that the district court erred when it ordered her to share in the profit or loss on the sale of the home or, in the event it did not sell, pay half the mortgage.

[¶13] This Court has said that upon entry of a decree dividing marital property the division is final and not subject to revision because of a change in circumstances. *Broadhead v. Broadhead*, 737 P.2d 731, 733 (Wyo. 1987), citing *Barnett v. Barnett*, 704 P.2d 1308, 1309 (Wyo. 1985) and *Paul v. Paul*, 631 P.2d 1060 (Wyo. 1981). We have also said, however, that district courts have jurisdiction to modify a judgment resulting from a property division when the facts in a particular case establish the requisite circumstances to permit modification. *Barnett*, 704 P.2d at 1309-1310. More importantly for purposes of the present case, district courts have continuing jurisdiction to enforce the provisions of the original divorce decree and contempt proceedings are the appropriate mechanism for doing so. *Dorr v. Newman*, 785 P.2d 1172, 1179 (Wyo. 1990).

[¶14] Civil contempt must be proven by clear and convincing evidence. *Shindell,* ¶ 10, 322 P.3d at 1274. Clear and convincing evidence is evidence that would persuade a finder of fact that the truth of the contention is highly probable. *Id*. The elements of civil contempt include: 1) an effective court order that required certain conduct by the alleged contemnor; 2) the contemnor had knowledge of the order; and 3) the alleged contemnor disobeyed the order. *Id*. Once those elements are proven, the burden shifts to the person charged with contempt to show he or she was unable to comply.

[¶15] The divorce decree the district court entered in this case required the parties to list the home for sale within thirty days. The parties stipulated to the property division provisions contained in the decree. Presumably, they familiarized themselves with the contents of the decree before they agreed to it. Regardless, their show cause motions and testimony at the hearing reflect that they knew the decree required the home to be listed within thirty days. The decree requiring the parties to list the home for sale within thirty days was entered in May of 2011. The parties did not contact a realtor until 2012. Husband signed a listing agreement sometime in June 2012; Wife signed the listing agreement on July 9, 2012.

[¶16] After the parties signed the listing agreement, the realtor learned the parties were attempting to work out an agreement whereby Wife would transfer her ownership interest in the home to Husband in exchange for Husband taking her name off the mortgage. The realtor "fell out of the loop," stopped trying to contact the parties and received no communication from them until sometime in mid-2013. By the time of the second contempt hearing in September 2013, the realtor still did not have full authority from the parties to move forward with listing the home and the thirty day deadline to list the home

4

for sale imposed in the district court's first contempt order of May 16, 2012, had long since passed.

[¶17] Based upon this evidence, the district court was persuaded that neither party had obeyed the order contained in the May 2011 stipulated decree requiring them to list the home within thirty days. Although they signed a listing agreement in the summer of 2012, their actions thereafter caused the realtor to believe he did not have the authority to move ahead with the listing. The parties did nothing to follow up with the realtor for nearly a year. By September 2013, nearly two and a half years after they were first ordered to list the home for sale, the documentation necessary to formally list it still was not in place. Although each party attempted to show the other was at fault for the home not being listed, the district court apparently found their testimony unpersuasive and concluded neither of them had taken the steps required to get the home listed and sold. Clear and convincing evidence supported the district court's determination that the parties disobeyed the orders to list the home for sale within thirty days and the court's determination that they were in contempt was reasonable.

[¶18] Having concluded both parties were in contempt for failing to obey its earlier order, the district court then ordered that they could purge the contempt by executing the documentation necessary to give the realtor the authority to sell the home and filing it with the court within twenty days. As it had done in its earlier order, the district court exercised its inherent power to punish the contempt by directing that the home be sold "as is" with the parties sharing equally in any profit or loss from the sale and, in the event the home was not sold within ninety days, directing Wife to pay half the mortgage payment until it did sell.

[¶19] We find no clear and grave abuse in the district court's exercise of its discretion to punish the contemptuous conduct. Evidence was presented that by the time the district court entered its second contempt order, the value of the house was less than the outstanding mortgage. Given its finding that both parties were to blame for not getting the house on the market as the original decree required, it was reasonable for the district court to conclude the parties should share the loss on the sale. By the time the district court entered its second contempt order, Husband had been paying the mortgage of $2000 per month on the marital home for nearly two and a half years. Given the finding that Wife was equally at fault for not getting the home listed and sold, it was reasonable for the district court to require her to pay half the mortgage from that point until the home sold. The district court did not abuse its discretion in fashioning a remedy for the parties' contempt.

[¶20] Wife also claims the district court erred in failing to award her attorney fees and costs resulting from Husband's failure to transfer the investment accounts and stock options. She points to the provision in the stipulated decree requiring a party who fails to perform an obligation required by the decree to pay all fees and costs the other party

5

incurs as a result of the failure. She argues all that is required under the provision is failure to perform and the district court's finding that Husband's failure to transfer the accounts was not willful is irrelevant given the express language in the decree. Among other arguments, Husband asserts that the district court's order requiring the parties to bear their own fees and costs was proper given his testimony that when he changed employment in January 2012 his accounts were zeroed out, he believed he had lost the stock options with his former employer and he also believed the stock options issued by his new employer were not covered by the decree.

[¶21] The relevant provision of the decree stated:

> [Wife] shall be, and she hereby is, awarded, as her sole and separate property, the following:
>
> . . . .
>
> ii.      ½ of [Husband]'s investment accounts, pension plans, retirement accounts, 401K accounts, IRA accounts and/or stock options, as of the date of the entry of the within decree, to be divided by QDRO, as necessary. The Stock Options when they vest shall be equally divided between the parties in the same manner as the parties divided the vesting stock options in November, 2010, based on the value of the vesting stock options at the time of the entry of the Decree, less 28% of the value to cover [Husband]'s tax liability thereon.

[¶22] In her second motion for order to show cause, Wife claimed at the time of the divorce Husband had in his account 8,411 unvested shares of stock having a combined value of $278,992.87 as of April 30, 2011, and had not transferred any of those shares to her. She further claimed that on December 31, 2011, a stock split occurred and the above shares were reissued as 15,193 shares, with a total value of $250,380.64, in a spin-off company. She asserted that 8,555 of those shares vested on February 28, 2012, at a combined value of $159,123.00. After subtracting the 28% for taxes as the decree provided, Wife claimed she was entitled to $57,284.28 worth of the vested shares. Wife further asserted 1,595 shares had vested in February 2013 and the remaining 5,043 shares would vest in February 2014 and, while she did not know the value of those shares, she was entitled to half of the value after accounting for taxes.

[¶23] At the time of the divorce, Husband worked for Williams Energy and Production (Williams). At the hearing, Husband testified that at the end of 2011 he left his employment with Williams and went to work for WPX Energy (WPX), a spin-off company of Williams. He testified that in early 2012 he checked the account containing the stock options he had received from Williams and it showed "zero" stock options. He further testified that WPX later issued stock options to him but to his knowledge they had

nothing to do with his former employment. He testified that no stock options rolled over from Williams to WPX. Because none of the stock options from Williams ever vested, his account showed zero after he left Williams and WPX did not issue stock options to him until 2012, he believed he owed Wife nothing in the way of stock options under the terms of the decree.

[¶24] Based upon Husband's testimony, the district court "opted to [give] him the benefit of the doubt" that he did not understand the stock options WPX re-issued were the same stock options issued to him by Williams. The district court held that they were in fact the same stock options and ordered Husband to pay Wife one-half of the funds that had vested (less the 28% for taxes) within sixty days of the ruling and to transfer one-half of the remaining funds (again less the tax amount) within thirty days after they vested. The district court declined to order Husband to pay Wife's fees and costs related to the stock options, concluding that the evidence did not show he acted willfully.

[¶25] Wife argues the decree does not require a finding of willfulness before payment of fees and costs is ordered; rather, the decree simply requires a failure to perform. She asserts Husband failed to transfer one-half the stock options; therefore, he was required to pay her fees and costs. She also argues Husband knew the stock options re-issued by WPX were the same as those issued by Williams and his testimony to the contrary was not given in good faith.

[¶26] Addressing the last argument first, the district court had been dealing with the parties for over two years and was familiar with them and how they dealt with each other. Our rule is that the credibility of witnesses, the weight of the evidence, and conflicts in the evidence must be resolved by the finder of fact. *Olsen v. Olsen*, 2013 WY 115, ¶ 32, 310 P.3d 888, 895 (Wyo. 2013). We will not disturb the district court's findings concerning the credibility of the witnesses.

[¶27] We turn to Wife's assertion that a finding of willfulness was not required for the district court to order Husband to pay attorney fees and costs. In *Bowker v. Bowker*, 795 P.2d 1215, 1219 (Wyo. 1990), the property settlement agreement provided that a party who failed to perform an obligation imposed by the agreement would be responsible for the payment of attorney fees and costs incurred by the other party as a result of the failure or default. The post-decree proceeding in that case was caused by the husband's failure to perform his obligations under the property settlement agreement. This Court enforced the attorney fees provision of the agreement and awarded wife reasonable fees and costs because husband had "failed to demonstrate any justification for his conduct." *Id.* "[I]n the absence of such justification," we concluded, wife was entitled to payment of her fees and costs.

[¶28] In the present case, the district court declined to order Husband to pay attorney fees and costs mostly because it found that both parties were at fault for the house not

being listed. With regard to the stock options, the district court gave Husband the benefit of the doubt and accepted his explanation that he did not know the Williams and WPX stock options were one and the same. Thus, the district court was satisfied with the justification Husband gave for his failure to perform. The district court's decision not to award Wife attorney fees and costs was proper under *Bowker* because it found that Husband did not understand he was obligated to transfer stock options to Wife.

[¶29] Affirmed.