# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 78

### APRIL TERM, A.D. 2020

### *June 19, 2020*

BOYD VAN FLEET,

**Appellant**
**(Plaintiff),**

**v.**                                          S-19-0236

MARCELINE A. GUYETTE,

**Appellee**
**(Defendant).**

*Appeal from the District Court of Big Horn County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellant:*
> Christopher J. King of APEX Legal, P.C., Worland, Wyoming

*Representing Appellee:*
> Elizabeth Greenwood and Inga L. Parsons, Greenwood Law, LLC, Pinedale, Wyoming

*Guardian Ad Litem:*
> Thomas P. Keegan of Keegan, Krisjansons & Miles, P.C., Cody, Wyoming

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS, Chief Justice.**

[¶1]    Boyd Van Fleet (Father) and Marceline Guyette (Mother) divorced in 2016, and shortly thereafter Father filed a petition to modify custody of the parties' child.  The district court declined jurisdiction over the issue of child custody and ceded jurisdiction to the applicable court in California, the state where Mother and the child reside.  Father appeals that ruling, as well as the court's rulings on several other motions.  We affirm and award Mother her attorney fees and costs on appeal.

## ISSUES

[¶2]    Father presents nine issues on appeal, which we summarize and restate as:

> 1. Did the district court err in denying Father's motion to disallow the guardian ad litem's (GAL's) participation in the post-divorce proceedings and in ordering Father to pay GAL fees incurred in those proceedings?
>
> 2. Did the district court err in denying Father's request to have the parties' child interviewed and/or testify at the motions hearing?
>
> 3. Did the district court err in allowing Mother to present an affidavit imputing income to Father for purposes of calculating child support?
>
> 4. Did the district court err in awarding Mother attorney fees to compensate her for Father's contempt?
>
> 5. Did the district court err in awarding Mother post judgment interest on amounts Father was required to pay Mother pursuant to the divorce decree's property division?
>
> 6. Did the district court err in ordering forfeiture of a $5,000 bond that the court ordered Father to post to ensure compliance with child visitation terms?
>
> 7. Did the district court err in declining jurisdiction over Father's petition to modify custody and in ceding it to a court in California, where Mother and the child reside?

1

# FACTS

## A. Entry of Divorce Decree

[¶3]    Mother and Father were married in February 2013 and had one child born that same year.  In April 2015 Father filed a complaint for divorce, and during the proceedings, the district court appointed a GAL to "act as attorney for the subject child and [ordered that he] shall file such pleadings and participate in the case as necessary to protect the best interests of the subject child."

[¶4]    On October 11, 2016, the district court held a hearing on the settlement that the parties had reached on child custody and property division and confirmed their general agreement to those terms.  On October 13, 2016, the court held a trial to determine the parties' income and to set child support.  During that hearing, the court held Father in contempt for filing a financial affidavit that was inaccurate and omitted certain income, and it ordered that Father would be allowed to purge his contempt by filing a corrected financial affidavit.  The court then left the question of child support to be determined.

[¶5]    On December 5, 2016, the court entered a Stipulated Judgment and Decree of Divorce.  The decree contemplated that Mother would be moving to California with the parties' child and awarded her primary custody with a detailed visitation schedule for Father.  Concerning support, the decree ordered:

> Child support and temporary support will continue as is until otherwise agreed upon or ordered by the Court. The parties agree child support will be set at the statutory rate with no deviations.  If the parties cannot agree on net income figures to calculate child support the parties agree to using the current court dates to present information to the Court and have the Court determine the child support. This issue is deferred for further determination by the Court.

[¶6]    With regard to the division of property, the decree ordered Father to pay Mother $55,000 within ninety days and to deliver her wedding ring and band, or alternatively, their cash equivalent of $4,750, within five days of the decree's entry.  It further ordered:

> [Father] receives everything else, but agrees to provide written FFL documentation that the guns currently registered in [Mother's] name are transferred out of her name within thirty (30) days.  He shall also provide documentation that the UZI and black powder revolver are turned over to [Father's attorney] for return to [Mother's father], or delivered to law enforcement for destruction.

2

**B.      Post-Decree Proceedings**

[¶7]    On February 9, 2017, Father filed a petition to modify custody of the parties' child. He alleged that Mother was alienating him from the child and that the parental alienation was a material and substantial change in circumstances.  As to the relief sought, he requested:

> 1.      That this Court finds a material and substantial change has occurred to warrant modifying child custody herein;
>
> 2.      That this Court finds it is in the best interests of the minor child to live primarily with [Father] and that the Court award [Father] sole legal custody and primary residential custody of the minor child.
>
> 3.      That this Court orders a reasonable visitation schedule for [Mother].
>
> 4.      That this Court modifies child support due to the change in custody and in accordance with the Wyoming Child Support Guidelines.

[¶8]    For nearly two years following Father's filing of his petition, the parties litigated several issues besides the petition, including the GAL's role in the proceedings, child support, contempt motions filed by both parties on orders to show cause, and the proper jurisdiction to hear Father's petition to modify custody.[1]  On January 23-24, 2019, the district court held a hearing on the following pending motions:

> 1) Father's "Motion for Stay of Proceedings and to Have Minor Child Interviewed and for Removal of [GAL] and for Finding of Contempt Against [Mother];"
>
> 2) "[Mother's] Third Verified Motion for Order to Show Cause;"[2]
>
> 3) "[Mother's] Rule 54 Motion for Attorney Fees and Costs and Request for Post Judgment Interest;"
>
> 4) "[Mother's] Verified Request for Findings and Order of Imputed Income;"

---

[1] Because facts underlying the disputed issues do not lend themselves to a chronological telling, we will set forth additional relevant facts to our discussion of each issue.

[2] Mother's first two show-cause motions were heard in prior evidentiary hearings and ruled on by a separate order.

5) "[Mother's] Motion to Forfeit Bond;"

6) "[Mother's] Fourth Motion for Order to Show Cause;"

7) "[Mother's] Fifth Motion for Order to Show Cause;"

8) "[Mother's] Motion for Declination of Jurisdiction on the Basis of Forum Non Conveniens;" and

9) "[Father's] Supplement to Motion for Order to Show Cause Set for Hearing January 23, 2019 or Request for Order to Show Cause."

[¶9]    On May 2, 2019, the district court entered three orders from which Father appeals. It entered an "Order After Hearing," which ruled on all pending motions except Mother's motion to transfer jurisdiction and her Rule 54 motion. In that order, the court generally ruled against Father on his motions and in favor of Mother on her motions. The court's second order awarded Mother attorney fees and costs to compensate her for Father's contempt, as well as post judgment interest on amounts Father failed to pay Mother in violation of the divorce decree's property division. The third order stayed proceedings on Father's petition to modify custody, and ceded jurisdiction over the petition to a California court. On May 31, 2019, Father filed a notice of appeal from the three orders.

## DISCUSSION

## A.    GAL's Participation and Fees in Post-Divorce Proceedings

[¶10] On March 28, 2016, the district court entered a Stipulated Order Appointing Guardian Ad Litem, which directed as follows:

> The GAL shall act as attorney for the subject child and shall file such pleadings and participate in the case as necessary to protect the best interests of the subject child, including, but not limited to the following matters:
>
> 1.    Mental or physical examinations of a party or a child;
>
> 2.    Custody and/or visitation evaluations of experts pursuant to Rule 706, Wyoming Rules of Evidence, or other parties' expert witness evaluations;
>
> 3.    Temporary orders concerning care, custody, and maintenance of the subject child;

4

4. Contempt for noncompliance of court orders against a party;

5. Any other pleadings which address the best interests of the subject child; and

6. The GAL shall have no *ex parte* communication with the Court.

[¶11] Concerning recommendations that the GAL was required to make, the order directed:

A. The GAL shall formulate an independent position after considering all relevant information, including but not limited to, the desires of the subject children, parents, and relatives.

B. The GAL shall avoid appearances of bias or impropriety, but the GAL must form an opinion concerning the subject child's best interests and attempt to persuade the Court to that view.

C. The GAL shall make recommendations to the Court concerning the best interests of the subject child at all custody and disposition proceedings, and said recommendations may address, but not be limited to, the following areas:

1. Disposition of the subject child as appears most expedient and beneficial;

2. Relative competency of the parents;

3. Whether both parents or either parent has shown the ability to act in the best interests of the subject child; if so, a specification of an arrangement that encourages both parents to share in the rights and responsibilities of rearing their child;

4. Whether there is evidence of child abuse, spouse abuse or family violence; if so, a specification of arrangements that best protect the child; and

5. Mechanisms for accessing subject child's school records, activities, teachers and teachers' conferences, as well as medical and dental treatment providers and records.

[¶12]   On September 27, 2017, Father filed a motion asking the district court to disqualify the GAL from participation in the custody modification proceedings.  In support, he stated, "As this is a new matter and no appointment in the modification by the Court has occurred [the GAL] should be directed to discontinue any further involvement."  On November 15, 2017, the court issued an order denying Father's motion without explanation.  Father subsequently renewed his request for the GAL's removal, this time asserting that the GAL was not investigating Father's allegations or spending adequate time with the child.  Father asked that the court remove the GAL and appoint a new GAL.

[¶13]   In its Order After Hearing, the district court denied Father's renewed request.  It observed that the GAL's role was to provide information on the child's best interests and advocate for those interests, not to act on Father's "behalf and at his behest."  The court further found that Father had presented no testimony or evidence that the GAL was not performing his role as expected.

[¶14]   On appeal, Father contends that the district court lacked jurisdiction to continue the GAL's appointment after the original divorce proceeding had concluded.  He further contends that the court should have removed the GAL for cause for failing to properly fulfil his role as GAL.  Based on those same arguments, he then also contends that he should not be required to pay the GAL's fees.

## 1.      Jurisdiction to Continue the GAL's Appointment

[¶15]   "The existence or non-existence of a court's subject matter jurisdiction is a question of law that we review de novo."  *Life Care Center of Casper v. Barrett*, 2020 WY 57, ¶ 12, 462 P.3d 894, 898 (Wyo. 2020) (citing *Woodie v. Whitesell*, 2019 WY 115, ¶ 8, 451 P.3d 1152, 1155 (Wyo. 2019)).

> "Subject matter jurisdiction is 'the power to hear and determine the matter in controversy between the parties.'" *Linch v. Linch*, 2015 WY 141, ¶ 17, 361 P.3d 308, 313 (Wyo. 2015) (quoting *Brush v. Davis*, 2013 WY 161, ¶ 9, 315 P.3d 648, 651 (Wyo. 2013)). A district court's subject matter jurisdiction is invoked with the filing of a pleading "stating a case belonging to a general class over which the authority of the court extends." *Harmon v. Star Valley Med. Center*, 2014 WY 90, ¶ 46, 331 P.3d 1174, 1187 (Wyo. 2014) (quoting *Brown v. City of Casper*, 2011 WY 35, ¶ 44, 248 P.3d 1136, 1146 (Wyo. 2011)).

*Life Care*, ¶ 13, 462 P.3d at 898.

[¶16]  Father invoked the district court's jurisdiction when he filed a petition to modify custody of the parties' child and alleged a material change in circumstances.  *See* Wyo. Stat. Ann. § 20-2-204(c); *Arnott v. Arnott*, 2012 WY 167, ¶ 14, 293 P.3d 440, 445 (Wyo. 2012) (court has jurisdiction to modify custody order where material change in circumstances shown).  At that point the court had before it a child custody matter, and we have recognized a district court's authority to appoint a GAL to assist in such matters.

> The child's rights in a parental rights termination case are protected by appointment of a guardian ad litem. Section 14-2-312; *LM* [*v. Laramie Cty. DFS*, 2007 WY 189], ¶¶ 6-7, 171 P.3d [1077,] 1080-81 [(Wyo. 2007)]. ***Similarly, although there is no statutory requirement for appointment of a guardian ad litem in custody cases, courts frequently do so to protect the child's interests.*** *See*, *e.g.*, *Clark v. Alexander*, 953 P.2d 145, 151 (Wyo. 1998); *Hanson v. Belveal*, 2012 WY 98, 280 P.3d 1186 (Wyo. 2012). We explained the duties of the guardian ad litem in *Moore v. Moore*, 809 P.2d 261 (Wyo. 1991) and *Clark*, *supra*. In *Moore*, 809 P.2d at 264, we stated that the guardian ad litem is "the attorney for the minor whom he is appointed to serve" and "participates in the proceedings as an advocate." We expanded upon the *Moore* ruling in *Clark* and explained that the guardian ad litem performs dual roles, by acting in the child's best interest and as an advocate in his favor. With regard to the guardian ad litem's participation in court proceedings, we stated:
>
>> As counsel, the attorney/guardian ad litem has the opportunity and the obligation to conduct all necessary pretrial preparation and present all relevant information through the evidence offered at trial. Recommendations can be made to the court through closing argument based on the evidence received.
>
>> *Clark*, 953 P.2d at 154. *Clark*, therefore, states that the guardian ad litem should take an active part in all court proceedings.

*Matter of GAC*, 2017 WY 65, ¶ 19, 396 P.3d 411, 416 (Wyo. 2017) (emphasis added).

[¶17]  The district court plainly had jurisdiction over Father's petition to modify custody, and it had authority to use a GAL to assist in deciding the petition.  Father nonetheless contends that the court exceeded its jurisdiction because it did not obtain agreement of the

7

parties to the GAL's continued participation or make a formal appointment of the GAL. We disagree.

[¶18]  Father offers no authority to support his position, and in particular points to no statutory requirement that the parties must agree to the GAL's appointment and that the lack of a formal appointment deprives a court of jurisdiction to use a GAL.  Indeed, we have held that such formalities, even if statutory, are generally not jurisdictional and will be treated as jurisdictional "only where there is 'clear' indication that [the legislature] wanted the requirement to be 'jurisdictional.'"  *McCallister v. State ex rel. Dep't of Workforce Servs.*, 2019 WY 47, ¶ 15, 440 P.3d 1078, 1082 (Wyo. 2019) (quoting *TC v. Dep't of Family Servs. (Matter of Adoption of L-MHB)*, 2018 WY 140, ¶ 10, 431 P.3d 560, 565 (Wyo. 2018)); *see also MH v. First Jud. Dist. Court*, 2020 WY 72, ¶¶ 10-13, __ P.3d. __, __ (Wyo. 2020) (distinguishing a district court's subject matter jurisdiction and its statutory authority); *Linch v. Linch*, 2015 WY 141, ¶ 32, 361 P.3d 308, 316 (Wyo. 2015) ("a court does not lose subject matter jurisdiction over an action for failure to comply with statutory procedural requirements unless the statute contains an 'unequivocal expression' that failure to comply shall result in a loss of jurisdiction").  We thus find no basis for Father's suggestion that the district court was without jurisdiction to have the GAL from the original divorce proceeding participate in the proceedings relating to the petition to modify custody.[3]

## 2.    **Removal for Cause**

[¶19]  Father next argues that the GAL "did not perform any actions as a *Guardian Ad Litem* and should have been removed for cause."  He further argues he should have been removed because the parties only agreed to his appointment for the divorce proceedings.

[¶20]  As we noted above, a district court has authority to appoint a GAL in child custody cases, and Father has offered no authority to support his argument that the parties must agree to that appointment.  He likewise cites no authority to support his argument that the GAL should have been removed for cause and offers no citations to the record to support his argument.  We therefore do not consider these arguments further.  *See Osban v. State*, 2019 WY 43, ¶ 7 n.2, 439 P.3d 739, 741 n.2 (Wyo. 2019) ("An appellant is required to present this court with relevant authority and cogent argument.  It is not enough to identify a potential issue with the expectation that this court will flesh out the matter from there.  The appellant, at a minimum, must attempt to relate the rule of law he depends upon to the

---

[3] Even if there were a requirement that the court newly appoint the GAL to participate in the new proceedings, that appointment is implicit in this case. The district court denied Father's first motion to disqualify the GAL and shortly thereafter entered a scheduling order that included a due date for the GAL's report.  The court's decision to involve the GAL was clear.  We also note that the original order appointing the GAL directed that he was to make recommendations "concerning the best interests of the subject child *at all custody and disposition proceedings*." (Emphasis added.)  It makes sense then that the court would want and expect the GAL's recommendations on Father's petition to modify custody of the parties' child.

facts of his case.") (quoting *Sonnett v. First American Title Ins. Co.*, 2013 WY 106, ¶ 26, 309 P.3d 799, 808 (Wyo. 2013)).

### 3.    GAL Fees

[¶21]   In its Order After Hearing, the district court ordered Father to reimburse Mother for GAL fees in the amount of $3,505.50.  In challenging the award on appeal, Father merely incorporates his above arguments.  We therefore reject this claim of error for the reasons discussed above.

### B.    Denial of Request to have Child Interviewed or Testify

[¶22]   On April 10, 2018, Father filed a motion to stay proceedings to allow the parties' child to be interviewed by a psychologist that he had retained.  The district court ruled as follows:

> 1.      This Court held a scheduling conference call involving counsel for each of the parties, the Guardian Ad Litem, and court staff addressing the matters of dates, deadlines, and cutoffs, and other matters which was the subject of this Court's Scheduling Order filed December 18, 2017.
>
> 2.      A date for [Father's] witness designation was set for January 19, 2018 with a discovery cut-off date of March 30, 2018.
>
> 3.      The dates were agreed upon by the parties and were not imposed by the Court or court staff.
>
> 4.      The Scheduling Order also set forth a provision regarding requests for continuances, postponements, and extensions.
>
> 5.      In his motion, [Father] sought a stay of proceedings to have Ms. Jeanna Butterfield interview the minor child.
>
> 6.      However, [Father] never designated Ms. Butterfield as a witness and the deadlines for expert designations and discovery expired well before the filing of [Father's] motion.
>
> 7.      [Father] also did not utilize any of the avenues available to seek an extension of the discovery deadlines in order to designate or identify Ms. Butterfield as a witness.

9

8.      Finally, there was never a request made by [Father] for an examination by Ms. Butterfield made pursuant to the Wyoming Rules of Civil Procedure.

9.      Therefore, [Father's] *Motion for Stay of Proceedings and to Have Minor Child Interviewed* is hereby **DENIED**.

[¶23]   Father also designated the parties' minor child as a witness to be heard at the hearing on pending motions, without a description of the child's expected testimony.  The GAL objected on the following grounds:

The GAL objects to [Father's] designation of minor child being called as a witness, either as a fact witness or to express his preference.  The child is only five years old.  As a prerequisite for obtaining a preference from a child, the Wyoming Supreme Court has stated in *KES v. CAT*, 107 P.3d 779, 783 (Wyo. 2005): "We have long held that 'the trial judge may interview a child to determine its preference as to living with either the mother or father, ***provided that the child is of sufficient age to understand the effect of the expression of such preference***, though an expression of such preference is not conclusive." [additional citations omitted] . . . Insofar as [Father] has designated the minor child as a fact witness, the GAL objects on the grounds of competency (see *Burt v. Burt*, 49 Wyo. 19, 41 P.2d 524 (Wyo. 1935)), relevance and failure to provide a specific summary on what the child is expected to testify to . . . .

[¶24]   The district court sustained the GAL's objections, and in so ruling noted that Father had not responded to them.  On appeal, Father contends that the court erred in denying his request to have the parties' child interviewed as to his preferences and in not allowing the child to testify.

[¶25]   This Court reviews a district court's decisions on whether to interview a child or admit a child's testimony for an abuse of discretion.  *Holiday v. Holiday*, 2011 WY 12, ¶ 10, 247 P.3d 29, 32 (Wyo. 2011) (child interview); *Young v. State*, 2018 WY 53, ¶ 14, 418 P.3d 224, 227 (Wyo. 2018) (child testimony).  We likewise recognize that a district court has broad discretion to enforce its scheduling orders.  *Estate of Weeks by and through Rehm v. Weeks-Rohner*, 2018 WY 112, ¶ 40, 427 P.3d 729, 739 (Wyo. 2018).  "The appellant bears the burden of showing an abuse of discretion."  *In re Paternity of HLG*, 2016 WY 35, ¶ 7, 368 P.3d 902, 904 (Wyo. 2016) (quoting *Wise v. Ludlow*, 2015 WY 43, ¶ 42, 346 P.3d 1, 12 (Wyo. 2015)).

## 1.    Child Interview

[¶26] Although on appeal Father contends that the district court erred in failing to interview the parties' child concerning his wishes, the record contains no indication that Father ever made such a request.  Instead, the record shows that his only request was to have Father's retained psychologist interview the child, not about his custody preference, but about allegations Father had made against Mother.  The district court denied that request as untimely because the discovery and expert designation deadlines had passed without Father identifying the psychologist as an expert, and also because it was not made under the proper rule of civil procedure.  Father does not dispute these findings or offer any argument that the court's reliance on them was an abuse of discretion.  Father therefore has not supported his claim with cogent argument, and we will not consider it further.  *See Osban*, ¶ 7 n.2, 439 P.3d at 741 n.2.

## 2.    Child's Testimony

[¶27]  During Father's direct examination at the motions hearing, the following exchange took place:

> Q.      Okay.  Have you further reviewed the order of the court that basically set forth that you were not allowed to call your child as a witness in this matter?
>
> COURT:      In this hearing.
>
> [Counsel for Father]:       I'm sorry, your Honor?
>
> COURT:      I said in this hearing.  That's what, that's what was denied, to call the child as a witness at this hearing.
>
> [Counsel for Father]:       Yes, your Honor.
>
> COURT:      Okay. I just want to make sure that it's clear.  I didn't say in this matter, I just meant at this hearing.
>
> [Counsel for Father]:       Yes, your Honor. Thank you.

[¶28]  Father did not at that point, or at any other point, make an offer of proof as to the testimony he expected from the child, and he thus failed to preserve his objection.

> Because Appellant's attorney did not preserve this issue by offering the evidence and then making an offer of proof if it

was refused, his assertion that the district court somehow erred is without merit. Beyond that, without an offer of proof, we have no realistic means of evaluating whether it might have been admissible and whether failure to receive it could have been prejudicial. *Guy-Thomas v. Thomas*, 2015 WY 35, ¶ 12, 344 P.3d 782, 786 (Wyo. 2015).

*Matter of LDB*, 2019 WY 127, ¶ 48, 454 P.3d 908, 922 (Wyo. 2019) (quoting *Carrier v. State*, 2017 WY 88, ¶ 27, 400 P.3d 358, 365 (Wyo. 2017)).

[¶29] Because Father did not make an offer of proof to establish the relevance of the child's testimony to the motions hearing, we have no way to gauge its admissibility or any prejudice that may have resulted from its exclusion. We therefore must conclude that the district court did not abuse its discretion. *See Carrier*, ¶ 27, 400 P.3d at 365.

## C.      Imputed Income for Child Support Calculation

[¶30] On February 16, 2018, the district court entered an order for joint child support calculation, which required (emphasis in original):

> Each party shall complete a verified financial affidavit in a form substantially conforming to that approved by the Wyoming Supreme Court and available through the Clerk of District Court. The confidential financial affidavits **must be filed within twenty (20) days of the date of this Order**, and each party shall file an original affidavit with the Clerk of District Court and provide a copy to the other party (and GAL, if applicable), along with the following information: copies of income tax returns from the last two (2) years; copies of all W-2 forms from the last two (2) years; and, copies of all statements of earnings from each employer showing cumulative pay for this year to date. Parents who are self-employed must supply verified income and expense statements from their business for the two (2) most recent years.

[¶31] On March 8, 2018, Mother filed a confidential financial affidavit along with the required tax returns and W-2 forms as well as her paystubs for December 2017 and January 2018. On March 15, 2018, Father filed a "Notice of No Change in Financial Status," by which he asserted that he had no change in income and none was anticipated. He did not provide the required copies of tax returns and W-2 forms or verified income and expense statements from his business.

12

[¶32] On May 15, 2018, the district court held Father in contempt for failing to provide the court with the required financial information. The court then ordered:

> 23. [Father] shall have up to May 31, 2018, to file the required confidential affidavit and provide the information as set forth in the Court's Order for Joint Child Support Calculation, filed February 16, 2018.
>
> 24. If [Mother] disagrees with the financial information submitted by [Father], [Mother] shall outline her reasons and submit them to the Court with a request for a hearing.
>
> 25. If [Father] fails to submit the required financial affidavit, [Mother] shall file an affidavit of imputed income alleging the income for [Father] by June 15, 2018.
>
> 26. Once the net income of the parties is determined to the satisfaction of the Court, child support shall be calculated pursuant to the Wyoming statutory guidelines set forth in W.S. § 20-2-304.

[¶33] Father did not submit the required financial information, and on June 15, 2018, Mother submitted a verified statement of imputed income. Mother pointed out that Father had last filed a financial affidavit in 2015 and that since then she had investigated his income and found income in 2014 that was not reported in his 2014 tax return.[4] Mother proposed that the court could use the income reported in Father's 2015 financial affidavit combined with the unreported income, which she calculated to total a net $27,426.16 per month. Alternatively, she proposed using Father's 2015 tax return, with his gains and depreciation added back in, which resulted in a net monthly income of $16,261.75. She concluded by requesting that, based on all the financial information, "a net monthly income of no less than $15,000 be imputed to [Father]."

[¶34] Following the January 2019 motions hearing, the district court ruled:

> 101. [Father] failed to provide his confidential financial affidavits as ordered and has not done so as of the time of the January 2019 hearing.

* * * *

---

[4] Evidence of this 2014 unreported income was presented in the trial on income and child support before the divorce decree was entered and was the basis of the district court's prior order holding Father in contempt for failing to provide an accurate financial affidavit.

13

103.    Moreover, at none of the hearings held by this judge has [Father] given definitive testimony to the Court that would satisfy the requirement to provide the Court with information to address the proper child support calculation.

104.    The Court ordered that in the event [Father] failed or refused to provide the requested income information the Court would allow [Mother] to provide an affidavit of imputed net monthly income for [Father].

105.    [Father] has never attempted to perform a calculation or provide any information necessary or required for the Court to calculate the proper child support.

106.    The Court will rely on the affidavit of imputed income filed by [Mother], finding it reliable and fact based, after a diligent investigation into the income of [Father].

107.    Thus, the Court accepts the calculations provided by [Mother] and her motion is **GRANTED** and [Father's] income is hereby imputed at $15,000.00 per month.

* * * *

112.    If [Father] believes that this child support would be subject to some adjustment, then the burden of coming forward to demonstrate that the child support calculation would be changed pursuant to Wyoming statute is upon [Father].

[¶35]  Father contends that the district court erred in relying on Mother's affidavit of imputed income because the affidavit was by Mother's attorney, not Mother. He argues that the court had no authority to rely on such an affidavit and that it was defective because Mother's attorney had no personal knowledge of Father's income and did not have a background in accounting or finance.

[¶36]  We review a district court's calculation of child support for an abuse of discretion.

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. *Pinther v. Pinther*, 888 P.2d 1250, 1252 (Wyo. 1995) (quoting *Dowdy v. Dowdy*, 864 P.2d 439, 440 (Wyo. 1993)). Our review entails evaluation of the sufficiency of the evidence to support

14

the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. *Triggs* [*v. Triggs*], 920 P.2d [653,] 657 [(Wyo. 1996)]; *Cranston v. Cranston*, 879 P.2d 345, 351 (Wyo. 1994). Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. *Jones v. Jones*, 858 P.2d 289, 291 (Wyo. 1993).

*Lemus v. Martinez*, 2019 WY 52, ¶ 18, 441 P.3d 831, 835 (Wyo. 2019) (quoting *Stevens v. Stevens*, 2014 WY 23, ¶ 8, 318 P.3d 802, 806 (Wyo. 2014)).

[¶37] We have said that "we will not allow [a party] to disregard a statutory requirement (financial affidavit) and then complain that his failure to comply with the requirement deprived him of an accurate child support calculation." *Long v. Long*, 2018 WY 26, ¶ 30, 413 P.3d 117, 127 (Wyo. 2018) (citing *Peak v. Peak*, 2016 WY 109, ¶ 24, 383 P.3d 1084, 1091 (Wyo. 2016)). If a party fails to submit the required financial affidavit, as Father did in this case, the court has other options, including the option "to calculate income from evidence provided by the other parties." *Lemus*, ¶ 26 n.6, 441 P.3d at 837 n.6. Father cites no authority that that evidence may only be presented by an affidavit of Mother and not through an affidavit from Mother's attorney who investigated the income and derived a calculation based on that investigation. Furthermore, while Father challenges the attorney's qualifications to investigate his finances, he points to no inaccuracies or defects in the calculation. We therefore find no abuse of discretion in the district court's child support calculation.

## D.    Attorney Fees and Costs for Father's Contempt

[¶38] Mother filed five show cause motions against Father requesting that he be held in contempt for violations of the divorce decree's visitation, child support, and property division provisions. The district court issued two orders on the motions, one addressing the first two motions and the other addressing the remaining three motions. By separate order, the court awarded Mother attorney fees and costs to compensate her for Father's contempt.

[¶39] In its first order addressing Mother's show cause motions, the district court found that Father violated the divorce decree's visitation, child support, and property division provisions. As to the visitation requirements, the court found that Father: took the child out of California during visits that were required to be in California; failed to allow Mother required lunch visits; unilaterally added on additional days for visitation; and failed to keep Mother informed of the child's location. The court further found by clear and convincing evidence that Father had "offered no testimony to show that he was unaware of the requirements for visitation, or that he was unable to comply with the requirements." The

court then ordered that to purge his contempt, Father must provide a verifiable and detailed itinerary fourteen days in advance of any future proposed visits. It further ordered that if Father failed to provide the required itinerary, he must post a $5,000 bond that would be subject to forfeiture if he failed to timely return the child.

[¶40] The district court also found Father in contempt for failing to comply with the divorce decree's property division requirements. With respect to his failure to return Mother's wedding rings or their cash equivalent, the court stated:

> The Court finds incomprehensible [Father's] explanation that the rings were provided two years prior to the Divorce Decree. [Father] shall pay [Mother] the amount of $4,750.00 for failure to timely provide the rings. The Court shall further take under advisement the issue of adding interest related to non-payment of the $4,750.00 related to the rings.

[¶41] With respect to Father's failure to comply with the decree's requirements concerning the parties' firearms, the court ruled:

> 36. In order to purge the finding of indirect civil contempt for failure to comply with the firearm provisions of the Decree, [Father], by June 1, 2018, shall provide a specific affidavit to the Court and [Mother] that the firearms to be dealt with in the Decree have been melted down and wholly destroyed by [Father]. This affidavit shall specifically describe the weapons that were destroyed and how and when they were destroyed and fully indemnify [Mother] for any future use of the weapons. This affidavit shall be held under seal by this Court, but may be subject to an affidavit for a search warrant or a subpoena and the rules governing access to court records. [Mother] shall receive a copy of the affidavit, but it need not be served on the guardian ad litem.
>
> 37. That should any legal or other liability arise related to the use of the firearms, [Father] shall fully indemnify and hold harmless [Mother] from any such liability.

[¶42] With respect to the decree's requirement that Father pay Mother $55,000, the court acknowledged that the payment was eventually made but held Father in contempt for failing to make it in a timely manner.

16

38. <u>Cash Settlement</u>. The Court FINDS [Father] in indirect contempt for failure to timely pay the $55,000.00 cash property settlement.

39. The Court acknowledges that a check for $55,000.00 for the settlement was transferred from [Father] to [Mother] on the date of the last court hearing, May 15, 201[8].

40. An award of attorney fees and costs related to these matters will be considered by the Court as a remedy.

[¶43] The district court ruled on Mother's third, fourth, and fifth show cause motions in its May 2019 Order After Hearing.[5] With respect to her third motion, the court found and ordered:

75. [Mother] seeks a finding of contempt against [Father] for his failure to return the minor to [Mother] by extending his visitation and requiring [Mother] to come to Wyoming to retrieve the child.

76. [Father] unilaterally chose not to return the Parties' minor child to [Mother] as required by the terms of the Decree.

77. [Father's] conduct was unauthorized under the terms of the Decree and the parties' agreement as to this visitation.

78. [Father] also refused to cooperate even to the degree of meeting [Mother] at an airport in Billings, Montana, or make any cooperative efforts to return the child after this extended visitation.

79. As a result of [Father's] contemptuous conduct [Mother] incurred significant costs and anxiety.

80. [Father] is found to be in indirect civil contempt for willfully violating the Decree.

81. Accordingly, [Father] is ordered to pay to [Mother] the sum of $1,441.80 as compensation for [Mother's] expenses

---

[5] Mother's third motion was filed before the May 2018 hearing on her first two motions, but the court delayed hearing it until the hearing on other pending motions. The fourth and fifth motions were filed after the court's May 2018 hearing.

incurred for having to travel to Wyoming to retrieve the Parties' minor child.

82.     Said sum is in the form of a judgment and as such is subject to statutory judgment interest.

[¶44]  Mother's fourth show cause motion alleged Father's continuing failure to pay her for her wedding rings and provide the required firearms documentation.  With respect to the wedding rings, the district court found that the issue had already been addressed when it held Father in contempt and that that ruling resulted in a monetary judgment for Mother. As to Father's failure to provide the previously ordered firearms affidavit, the court ruled (citations omitted):

87.     [Father] was previously found to be in indirect civil contempt for his failure to comply with the Decree with regard to the destruction of and/or transfer of the firearms.

88.     [Father] was permitted to purge his indirect civil contempt by providing a specific affidavit to the Court and to [Mother] by June 1, 2018.

89.     No specific responsive affidavit has been filed to date.

90.     Pursuant to the Order After Hearing, [Father] shall fully indemnify and hold harmless [Mother] from any liability related to the firearms.

91.     [Mother] also can utilize ¶ 15 of the Decree in terms of the transfer of property through a certified copy of the Decree.

92.     [Father] will pay [Mother's] attorney's fees and interest on the attorney's fees from the initial contempt finding; which will be determined by separate Order of this Court.

93.     The Court is unwilling to imprison [Father] but is unable to come up with a realistic remedy beyond what has been ordered and therefore the Court declines to provide any further remedial remedy.

[¶45] Mother's fifth show cause motion alleged that Father had failed to make any payments toward his child support arrears and had missed his payments for July and October 2018.  The district court again found Father in contempt and that the entire amount

of child support owed was a judgment by operation of law and subject to post judgment interest.

[¶46] By separate order, the district court awarded Mother losses incurred in the amount of $3,505.50. This included costs she incurred for GAL fees, and expenses for airline travel, lodging, and vehicle rental for the hearings. The court also awarded $15,170 in fees and $329.71 in taxable costs.

[¶47] Father does not dispute the findings underlying the district court's contempt rulings, and he does not challenge the $3,505.50 award for Mother's losses or the award of taxable costs. He instead contends that the court lacked authority to award Mother attorney fees for his contempt because the divorce decree does not permit such an award. He further contends that the court improperly used its contempt power to enforce a property settlement. Neither argument has merit.

[¶48] We will reverse a contempt order "only upon a finding of 'a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion.'" *Life Care*, ¶ 29, 462 P.3d at 902 (quoting *Lew v. Lew*, 2019 WY 99, ¶ 8, 449 P.3d 683, 686 (Wyo. 2019)).

## 1.    Divorce Decree Provisions

[¶49] The parties' original version of the stipulated divorce decree contained two provisions that spoke to attorney fees in the event a party was required to bring an enforcement action. One was under the general provisions and read: "In the event a party defaults or violates any of the terms and conditions of this agreement, should the non-defaulting party prevail, the defaulting party shall be liable for costs and reasonable attorney fees to the non-defaulting party." The other provision was in the recitation of the orders and read: "[F]ailure to comply with the terms and conditions herein may subject the non-complying party to sanctions, including but not limited to the payment of attorney's fees and costs." In the final decree, the district court lined through those provisions and initialed the deletions.

[¶50] Father contends that the deletions mean that the parties agreed that attorney fees would not be awarded in the event of an enforcement action. Of course it does not. The striking of the provisions could just as easily mean the parties could not agree on them, which is in fact what Mother's attorney testified to at the motions hearing. On cross-examination by Father's attorney, she testified:

> I don't believe a final decree was ever actually agreed upon, there were objections to that by your client. Judge Cranfill held a hearing on it, Judge Cranfill had all of us before him, he went through the Decree of Divorce line by line and asked

everybody if they agreed to that particular language, or didn't agree to that particular language, anything that wasn't specifically agreed upon by everyone was crossed out by Judge Cranfill, . . . .

[¶51] The decree is thus silent on the question of attorney fees and costs in the event an enforcement action is required. That does not, however, affect the district court's enforcement authority because "[c]ourts have both inherent and statutory authority to enforce their orders in domestic relations cases through civil contempt sanctions." *JLK v. MAB*, 2016 WY 73, ¶ 19, 375 P.3d 1108, 1113 (Wyo. 2016) (citing *Shindell v. Shindell*, 2014 WY 51, ¶ 8, 322 P.3d 1270, 1273 (Wyo. 2014)). Moreover, in such enforcement actions, a court has discretion to award attorney fees and costs.

> There is no question that [Wyo. Stat. Ann. § 20-2-111] allows a party to obtain reimbursement of attorney's fees incurred in original divorce actions as well as proceedings to modify or enforce divorce decrees.

*Bullock v. Bullock*, 2014 WY 131, ¶ 29, 336 P.3d 136, 144 (Wyo. 2014) (quoting *Burnett v. Steeley*, 2008 WY 94, ¶ 33, 190 P.3d 132, 139 (Wyo. 2008)).

[¶52] The district court acted well within its authority in ordering Father to pay Mother's attorney fees, and we therefore find no abuse of discretion.

## 2. Use of Contempt Power to Enforce Property Division

[¶53] Father next argues that the district court's use of its contempt power to enforce the divorce decree's property division provisions runs afoul of the holding in *Oedekoven v. Oedekoven*, 538 P.2d 1292 (Wyo. 1975), where our Court said:

> The rule is plainly stated in 24 Am.Jur.2d (Divorce and Separation) § 921, p. 1049:
>
> > "Assuming that performance of an act called for by a property settlement may be enforced by a contempt proceeding where the court distinctly orders performance, performance will not be so enforced where the decree is not to be construed as including such an order. Thus, if the decree approves a property settlement but does not order the parties to perform its obligations, the violation of the agreement is not a violation of the decree and is not a contempt of court."

20

To the same effect is 27B C.J.S. (Divorce) § 300(3), p. 382, where it is said:

"The provisions of a property settlement agreement, which is complete in itself and is merely referred to in the decree or approved by the court but not actually made a part of the decree, cannot be enforced by contempt proceedings. * * *"

*Oedekoven*, 538 P.2d at 1293-94.

[¶54] Father's reliance on *Oedekoven* is misplaced. The rule announced in that case applies only if a court merely approves or ratifies a settlement. It does not apply if the court orders performance of the agreement's obligations. In this case, the divorce decree states, "IT IS FURTHER ORDERED that the parties shall abide by the following terms and conditions," and thus plainly falls outside the mere approval or ratification of a property settlement to which *Oedekoven* applies. *See also Fowles v. Fowles*, 2017 WY 112, ¶¶ 5, 35, 402 P.3d 405, 408, 413 (Wyo. 2017) (upholding contempt order against husband for violating property division under stipulated decree); *McAdam v. McAdam*, 2014 WY 123, ¶¶ 1, 19, 335 P.3d 466, 468, 471 (Wyo. 2014) (upholding contempt order against both husband and wife for violating property division under stipulated decree); *Greene v. Finn*, 2007 WY 47, ¶¶ 3, 13, 153 P.3d 945, 946, 950-51 (Wyo. 2007) (upholding contempt order against husband for violating property settlement incorporated into decree).

### E.    Post Judgment Interest

[¶55] The district court awarded post judgment interest on Father's unpaid child support and on his unpaid property division payments. Father claims this was error because the divorce decree does not provide for the award of post judgment. In so arguing he does not distinguish between the interest awarded on the different judgments, he does not address the statutory authority on which the district court based its award, he does not cite to the record, and he does not cite to any pertinent authority. Father therefore has not supported his claim with cogent argument, and we will not consider it further. *See Osban*, ¶ 7 n.2, 439 P.3d at 741 n.2.

### F.    Bond Forfeiture

[¶56] On September 10, 2018, Mother filed a motion to forfeit Father's $5,000 visitation bond. Mother alleged that Father failed to provide an itinerary for a recent visit with the child, posted the required bond, and then failed to return the child at the agreed-upon time. She further alleged that the child's late return required that she cancel her own travel plans with the child.

[¶57]  Following its evidentiary hearing, the district court found and ordered (citations omitted):

> 113.   Pursuant to the [June 26, 2018 order], [Father] was required to post a $5,000 bond if he failed to timely provide a 14-day advance itinerary.
>
> 114.   [Father] failed to provide a 14-day advance itinerary and posted a bond in the amount of $5,000 pursuant to this Court's order.
>
> 115.   According to the Order, if [Father] failed to timely return the child, the $5,000 bond would be forfeited.
>
> \* \* \* \*
>
> 117.   [Father] was aware that [Mother] intended to take the child upon his return on a trip to Disneyland for the child's birthday.
>
> 118.   [Father] failed to return the child as agreed and as a result the trip to Disneyland was affected or cancelled.
>
> 119.   [Father] claimed that the failure to return [as] planned was the result of the child's personal accident that caused them to miss some plane connections.
>
> 120.   Further inquiry shows the [Father's] original travel schedule and itinerary for the return of the child would not have resulted in the return of the child by the time [Father] and [Mother] had agreed in order to make the trip to Disneyland.
>
> \* \* \* \*
>
> 123.   Forfeiture is not favored and there should be some rational relationship between the amount of the bond and the possibility or potential that the entire amount would be forfeited.
>
> 124.   This Court finds that [Father's] failure to return the child as required or agreed resulted in [Mother] suffering consequential losses which exceed the $5,000 that was the face

22

of the bond which would include attorney's fees and other costs related to this issue.

125. Therefore, [Mother's] Motion is **GRANTED**, and [Father's] bond in the amount of $5,000.00 is to be forfeited and to be paid to [Mother] for [Father's] failure to return the minor child to [Mother] at the agreed upon time, thus creating consequential losses by [Mother] and the minor child.

[¶58] Father does not dispute the accuracy of the district court's findings. He instead asserts that he returned the child on the day on which he and Mother agreed and that the bond order did not clearly require more than that. He thus contends that the district court had no basis to forfeit his bond and erred in doing so. We disagree.

[¶59] We have held that "[a] bond-posting requirement, used to ensure compliance with a decree in visitation and custody cases, is within the discretion of the district court and finds support in the law." *Shindell*, ¶ 26, 322 P.3d at 1276 (quoting *Stonham v. Widiastuti*, 2003 WY 157, ¶ 28, 79 P.3d 1188, 1197 (Wyo. 2003)). We also recognize that a court has broad discretion to determine the appropriate sanction when one of its orders is violated. *Womack v. Swan*, 2018 WY 27, ¶ 29, 413 P.3d 127, 138 (Wyo. 2018).

[¶60] The court's order requiring the posting of a visitation bond stated:

17. The Court will require that in order for [Father] to purge his contempt, he shall provide in a verifiable written form, an itinerary for every proposed future visit. The itinerary shall be provided to [Mother] fourteen (14) days in advance of any requested or scheduled visit. It shall specifically provide pick up date, time and location, whereabouts of the minor child during the visit, and a date, time and location for drop off or return of the minor child. The written form shall specifically include whether [Father] is flying or driving, and if flying, a flight itinerary, including airline flight numbers, pick up and return information. Failure to provide the verifiable written itinerary shall require [Father] to post a $5,000.00 cash bond with the Clerk of District Court and written proof of the same to [Mother], which will allow him to exercise his visitation based on a specific pick up and drop off date.

18. Should [Father] fail to timely return the minor child, the $5,000.00 cash bond shall be subject to forfeiture and further hearing before the Court. If the child is returned on time, the $5,000.00 shall be released to [Father].

[¶61] The bond allowed Father to exercise visitation with a "specific pick up and drop off date" and was subject to forfeiture if Father failed to "timely" return the child. The requirements of the itinerary provide guidance as to what the district court intended by a "specific pick up and drop off date," and a "timely" return is easily understood to contemplate the date, time, and location upon which the parties agreed. There may be circumstances under which returning the child on the correct day but late would not justify a forfeiture. Under these circumstances, however, where Father knew of Mother's travel plans, knew the importance of returning the child by the specified time, agreed to return the child by that time, and then scheduled his travel in a way that ensured that the child would not be returned on time, we can find no abuse of discretion in the forfeiture.

## G. Order Declining Jurisdiction

[¶62] Mother moved to transfer jurisdiction over Father's petition to modify custody to a court in California. She argued California was the more appropriate jurisdiction to rule on custody issues because she and the child had lived in California for over two years and those who would have relevant evidence, including current doctors, counselors, child care providers, teachers, and the child's maternal grandparents, were all located in California. The GAL did not object to Mother's motion and observed that many of the child's resources and supports were located in California, which made his task more difficult and expensive. Father opposed Mother's motion and contended that the relevant factors favored the Wyoming court retaining jurisdiction.

[¶63] The district court granted Mother's motion. It reasoned:

> 2.     [Mother and the child] do not have a significant connection with this State, and substantial evidence is no longer available in this State concerning the child's care, protection, training and personal relationships. *See* Wyo. Stat. Ann. § 20-5-302(a)(i).
>
> 3.     [Mother and the child] do not reside, and they have not recently resided, in this State since December 11, 2016. *See* Wyo. Stat. Ann. § 20-5-302(a)(i).
>
> 4.     All relevant factors, including those in Wyo. Stat. Ann. § 20-5-307(b), were considered and conscientiously weighed after applying all relevant, admissible, and credible information made available to the Court by the parties.

5. The majority of any evidence required to resolve any pending issues or other matters in this case would be found in California, where [Mother and the child] reside.

[¶64] Father contends that the district court erred in granting Mother's motion, but in so arguing he does no more than reference his response filed with the district court. This is not a cogent argument.

> [W]e have held that we will not consider arguments that are supported by no more than a reference to arguments made to the district court.

> Appellant's argument cited neither pertinent authority nor made cogent argument. Appellant also incorporated by reference trial briefs contained in the record rather than the parts of the record relied on as directed by WYO.R.APP.P. 7.01(f). *See Scherling v. Kilgore*, 599 P.2d 1352 (Wyo. 1979) (noting that this method does not comply with the rules)[.]

*Byerly v. State*, 2019 WY 130, ¶ 17, 455 P.3d 232, 241 (Wyo. 2019) (quoting *Davis v. Big Horn Basin Newspapers, Inc.*, 884 P.2d 979, 983 (Wyo. 1994)).

[¶65] Because Father has not presented a cogent argument on this claim, we will not consider it further.

## H.     Mother's Request for Attorney Fees and Costs on Appeal

[¶66] We next consider Mother's request for attorney fees and costs pursuant to W.R.A.P. 10.05(b), which provides that "[i]f the court certifies . . . there was no reasonable cause for the appeal, a reasonable amount of attorneys' fees and damages to the appellee shall be fixed by the appellate court and taxed as part of the costs in the case." Rule 10.05 sanctions "are generally not available for challenges to discretionary rulings, unless 'an appeal lacks cogent argument, there is an absence of pertinent legal authority to support the issues, or there is a failure to adequately cite to the record.'" *Deede v. Deede*, 2018 WY 92, ¶ 10, 423 P.3d 940, 943 (Wyo. 2018) (quoting *Carbaugh v. Nichols*, 2014 WY 2, ¶ 23, 315 P.3d 1175, 1180 (Wyo. 2014)).

[¶67] While Father's brief challenges discretionary rulings, a number of his claims were entirely unsupported by cogent argument, pertinent authority, and adequate cites to the record. Others disregarded our clear precedent or the relevant standard of review. Based on those deficiencies and Father's repeated violations of the divorce decree and other court orders, we grant Mother's request and certify that there was no just cause for appeal. *See*

*Barnes v. Barnes*, 998 P.2d 942, 946 (Wyo. 2000) (awarding Rule 10.05 sanctions for appellant's failure to designate record or provide cogent argument and waste of judicial resources in continued harassment of appellee).[6] We therefore award Mother her attorney fees and costs pursuant to W.R.A.P. 10.05(b). Mother shall submit a statement of costs and attorney fees to this Court, and upon review, an appropriate award of costs and fees will be ordered.

[¶68] Affirmed.

---

[6] We note that even had we not certified that Father had no just cause for appeal, Mother would have been entitled to an award of attorney fees and costs under Wyo. Stat. Ann. § 20-2-111.

> Section 20-2-111 . . . authorizes an award of attorneys' fees when necessary "to carry on or defend" an action brought for divorce. Wyo. Stat. Ann. § 20-2-111. We have applied this provision to award costs and attorneys' fees incurred in defending an appeal. *See Jensen v. Milatzo-Jensen*, 2014 WY 165, ¶ 25, 340 P.3d 276, 283 (Wyo. 2014). Mother necessarily incurred additional expense in having to defend against Father's extensive, but largely baseless, challenges to the district court's order on visitation and property division. . . . For these reasons, we conclude that reimbursement of certain costs and attorneys' fees is justified under Wyo. Stat. Ann. § 20-2-211. *Id.*

*Johnson v. Johnson*, 2020 WY 18, ¶ 38, 458 P.3d 27, 40 (Wyo. 2020).